United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 29, 2005**

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals
## for the Fifth Circuit

―――――――――

m 05-20214
Summary Calendar

―――――――――

NAOMI AUTIN,

Plaintiff-Appellee,

VERSUS

CITY OF BAYTOWN, TEXAS, ET AL.,

Defendants,

MICAH ALDRED,

Defendant-Appellant.

―――――――――――

Appeal from the United States District Court
for the Southern District of Texas
m 4:04-CV-481

―――――――――――

Before SMITH, GARZA, and PRADO,
   Circuit Judges.

PER CURIAM:[*]

Micah Aldred challenges the denial of summary judgment regarding an excessive force claim brought by Naomi Autin. Finding no error, we affirm.

I.

The district court relied on the following pertinent facts: On July 11, 2003, fifty-nine-year-old Autin went to her brother's house to check the mail. When no one answered the door, she became concerned about the occupant, who she had reason to believe was seriously ill. Because she could hear the television loudly through the door, Autin began knocking on the door with a brick she found in the yard, thinking this might get the occupant's attention. She then went to a neighbor's house to telephone her brother's house.

When this was unsuccessful, she contacted the Baytown Police Department, and Officer Aldred came to the scene. Autin requested Aldred's help in getting someone to answer the door. When Aldred told her he could not make anyone come to the door, Autin dismissed Aldred and returned to the door to continue knocking on it with the brick.

As Autin picked up the brick and approached the door, Aldred attempted to use his taser on her, but it malfunctioned, so he approached her and attempted a contact tase, but the taser again malfunctioned, causing a taser dart to penetrate Autin's skin. Aldred then repeatedly contact-tased Autin while physically forcing her to the ground. Autin hit her head on a pole and suffered a severe laceration.

II.

Autin sued Aldred, the City of Baytown, and a number of police and city officials, alleging a variety of civil rights violations. The district court awarded summary judgment to the defendants on all of Autin's claims except for her excessive force claim against Aldred. Aldred contends that as a state official, he is entitled to summary judgment based on qualified immunity from the excessive force claim.

III.

The standard of review we apply in an interlocutory appeal asserting qualified immunity differs from the standard employed in typical appeals of summary judgment rulings. *Kinney v. Weaver*, 367 F.3d 337, 348 (5th Cir. 2004) (en banc). Ordinarily, we review the denial of summary judgment *de novo*, determining on our own review of the record whether a genuine issue of material fact exists. *Id.* In the qualified immunity context, however, we consider only whether the district court erred in assessing the legal significance of the conduct the district court deemed sufficient to overcome qualified immunity. *Id.*

The district court properly took the view of the facts most favorable to Autin.[1] We are to decide only whether that court erred in concluding as a matter of law that Aldred was not

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] *See Gonzales v. Dallas County*, 249 F.3d 406, 411 (5th Cir.2001) (stating that "[o]n interlocutory appeal the public official must be prepared to concede the best view of the facts to the plaintiff and discuss only the legal issues raised by the appeal.").

entitled to qualified immunity on these facts. Such a review of the district court's assessment of the legal consequences of the facts is *de novo*. *Id.*, at 349.

## IV.

The Supreme Court has established a two-part test to be applied in determining whether the presumption of qualified immunity is overcome. First, "taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, is the right violated clearly established?" *Id*. This second question must be answered in light of the specific context of the case, not as a broad, general proposition. *Brosseau v. Haugen*, 543 U.S. 194 (2004) (citing *Saucier*, 533 U.S. at 201). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 201.

The district court correctly found that the facts alleged show that Aldred's conduct violated Autin's Fourth Amendment right to be free from excessive force. To succeed in such a case, a plaintiff must demonstrate that (1) he suffered a significant injury; (2) resulting directly and only from the use of force that was clearly excessive to the need; and (3) the force used was objectively unreasonable. *Fontenot v. Cormier*, 56 F.3d 669, 675 (5th Cir. 1995).

Autin suffered a significant head injury that resulted directly and only from the force Aldred used against her. The relevant question is whether, taking Autin's version of the facts as true, the force used by Aldred was both excessive to the need and objectively unreason-

able. In Fourth Amendment excessive force cases, the reasonableness question amounts to "whether the totality of the circumstances justifies a particular sort of seizure." *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985). Important factors to be considered include the severity of the crime, whether the actor poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Graham v. Connor*, 490 U.S. 386, 396 (1989).

On the facts as presented by Autin and relied on by the district court, Autin was at most committing the minor crime of criminal mischief. She posed no objective threat to Aldred or others and was not resisting or attempting to evade arrest. It is irrelevant that Aldred claims he felt threatened by Autin because she wielded a brick. The question is whether the use of force was objectively reasonable under the circumstances as alleged by Autin, not whether the force was justified based on Aldred's claimed interpretation of the situation at the time.[2]

Not only was Autin not resisting arrest, but Aldred's tasing of her was allegedly the first indication he gave to her that she was doing anything wrong. He tased her when her back was to him, he gave her no notice of his intention to do so, and he continued to tase her repeatedly, even after she was subdued on the ground. In judging the objective reasonableness of Aldred's use of force, it should not be forgotten that Autin was fifty-nine years old

---

[2] *See Stroik v. Ponseti*, 35 F.3d 155, 158 (5th Cir. 1994) (stating that "the only question is whether Ponseti's use of force was 'objectively reasonable' in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation").

and five feet two inches tall. Given these alleged facts, Aldred's use of force was both excessive to the need and objectively unreasonable. The district court correctly found that the facts as alleged show a violation of Autin's Fourth Amendment rights.

After establishing that the violation of a constitutional right had been alleged, the district court failed adequately to address the second factor in the qualified immunity analysis SSwhether the right was clearly established. The court appears to have approached the question of objective reasonableness as though it were dispositive of both elements of the qualified immunity test.

Each element must be addressed independently, however. *Saucier*, 533 U.S. at 204-05. The first element involves the objective reasonableness of the officer's conduct, and the second looks to whether he could have made a reasonable legal mistake in deciding whether his conduct was legal. As stated above, the relevant inquiry is whether it would be plain to a reasonable officer that his conduct was unlawful in the situation he confronted. *Id*.

Aldred will succeed on his qualified immunity claim if he can show that his mistaken belief in the legality of the force used against Autin was reasonable given the state of the caselaw on excessive force at the time of the incident. When discussing the law of excessive force, the Supreme Court and this circuit typically emphasize the three factors discussed above.[3] A reasonable officer is charged with knowing that, as clearly established law, these are factors that tend to indicate whether the use of force is appropriate.

None of these factors offers support for Aldred's conduct: Autin was objectively unthreatening, she was not resisting arrest in any way, and her crime was minor. Aldred, however, cites a number of cases in which courts have upheld qualified immunity defenses, and he claims these cases involve facts similar to those alleged here. In each of them, however, at least one of the three excessive force factors was plainly present. The plaintiffs in those cases either posed an objective threat to the officers or physically resisted arrest.

A jury trial may reveal other facts that justified Aldred's use of force. At the summary judgment stage, however, we are bound to take Autin's version of the facts as true. Given those facts, nothing about the situation facing Aldred would have indicated to a reasonable officer that repeatedly tasing a woman while forcing her to the ground was lawful conduct. Therefore, Autin's Fourth Amendment right to be free from excessive use of force was established under the particular circumstances she alleges.

AFFIRMED.

---

[3] *See, e.g.*, *Saucier*, 533 U.S. at 205; *Garner*, 471 U.S. at 11; *United States v. Brugman*, 364 F.3d 614, 616 (5th Cir. 2004); *Colston v. Barnhart*, 146 F.3d 282, 291 n.7 (5th Cir. 1998).