# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 5, 2012

No. 11-60693
Summary Calendar

Lyle W. Cayce
Clerk

TONIA MASSEY; GREG MASSEY,

Plaintiffs–Appellees,

v.

DEPUTY ROBERT WHARTON, Individually,

Defendant–Appellant.

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 2:08-CV-243

Before DENNIS, OWEN, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Defendant Robert Wharton, a deputy of the DeSoto County Sheriff's Department in DeSoto County, Mississippi, appeals the denial of his motion for summary judgment. Because material issues of fact exist, we affirm.

## I

In January 2008, Olive Branch, Mississippi police officers engaged in a high-speed chase of a fleeing motorist, Chad Gammons. As Gammons neared

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-60693

Olive Branch city limits, the DeSoto County Sheriff's Department was notified that Gammons was heading into the county. Wharton was on duty that night and responded to the dispatch. Eventually, Gammons ran off the road and crashed into the side of a house occupied by Essie Talley, the mother of plaintiff Tonia Massey and the grandmother of plaintiff Greg Massey. After the crash, both DeSoto County Sheriff's Department officers and Olive Branch police officers were at the scene.

The events that occurred after the crash are hotly disputed. As explained below, we cannot review the genuineness of those factual disputes, and we must accept the truth of the plaintiffs' assertions. For clarity, however, we set forth both sides' assertions below.

According to the plaintiffs, Greg Massey, who lived nearby, drove an all-terrain vehicle (ATV) to Talley's house in order to survey the damage resulting from the crash. Multiple police officers testified that Massey was moving at a high rate of speed. Greg Massey asserts that when he arrived on the scene, he began talking to Tonia Massey, his mother, and Talley, his grandmother. He claims that Wharton told him to get off the ATV but another officer yelled at him to drive it away and park it elsewhere. Wharton fired his taser at Greg almost immediately afterward. According to the plaintiffs, Greg did not say anything to Wharton before Wharton fired his taser, nor did Greg engage in any kind of physical altercation with Wharton. Greg testified that after Wharton deployed his taser, he told Greg to drive the ATV up the hill and park it by his parents' home. Greg began to drive away slowly, but Wharton persisted in the altercation and attempted to spray Greg with pepper spray. After being sprayed, Greg asserts that he continued up the hill, consistent with the officers' instructions. Wharton and other officers gave chase. At the top of the hill, Wharton allegedly deployed his taser again. Greg was then pulled off of the ATV, handcuffed, and arrested. Wharton testified that, although he did not

2

No. 11-60693

apply the handcuffs, he was the arresting officer.  Greg was taken to jail on charges of disorderly conduct and resisting arrest, both misdemeanor charges, which were subsequently dismissed.

Wharton has a contrary view of Greg's actions.  According to Wharton, Greg was initially asked to leave the scene, and when he failed to do so, he was asked to dismount his ATV.  Wharton argues that Greg became confrontational and refused to dismount.  It was only then that Wharton decided to deploy his taser.  Allegedly, a struggle over control of the taser ensued, and Wharton was finally able to fire the taser, but it failed.  According to Wharton, Greg continued to refuse compliance, so Wharton attempted to use his pepper spray, which Greg tried to deflect.  Greg then fled, driving the ATV quickly up the hill.  Wharton and other officers followed him.  Wharton alleges that Greg was pulled off of the ATV at the top of the hill by other officers and arrested.

With respect to Tonia Massey, the plaintiffs argue that she arrived at the top of the hill when Greg was already on the ground.  She claims that she saw Wharton tase Greg as he was being pulled off of the ATV.  She says that she begged the officers to leave her son alone and maintained that he had done nothing wrong.  Wharton allegedly told her to "shut up," which she did not do, but she maintains that she did not disobey any other commands from the officers—she was told to stay where she was and she did so.  Tonia testified in her deposition that Wharton became angry, grabbed her by the neck, and threw her to the ground.  He placed her in handcuffs and allegedly stomped his foot into the middle of her back.  She was then placed in a police car for two-and-a-half to three hours.  She was subsequently released and not charged.

Wharton asserts that he saw Tonia's verbal disturbance and its effect on the already-volatile situation and that she ignored many requests to quiet down and stop inciting the situation.  Other officers testified that she was moving toward the officers but was told to stop.  She allegedly did not comply and

3

No. 11-60693

officers tried to hold her back. Wharton advised her that she would be arrested and claims she struggled when he tried to apply handcuffs. With the help of another officer, he placed her on the ground and applied the handcuffs. She was then put in a police car, but it was ultimately decided that no charges would be filed and she was released.

Greg and Tonia Massey sued pursuant to 28 U.S.C. § 1983. Both Greg and Tonia claim that they were arrested without probable cause in violation of the Fourth Amendment and that they were unreasonably seized in violation of the Fourth Amendment. Greg also claimed that Wharton violated his constitutional right to be free from malicious prosecution. Tonia additionally claimed that Wharton violated her First Amendment right to be free from arrest for exercising her right to free speech. Wharton filed a motion for summary judgment asserting that he is entitled to qualified immunity. The district court granted the motion with respect to Greg's malicious prosecution claim, but denied it with respect to all other claims, holding that genuine issues of material fact exist.

## II

### A

Our jurisdiction to review denials of summary judgment on qualified immunity grounds is limited—we have jurisdiction over such appeals "to the extent that [the denial of summary judgment] turns on an issue of law."[1] Accordingly, we lack jurisdiction to review the district court's assessments regarding "whether there is enough evidence in the record for a jury to conclude that certain facts are true."[2] However, we can review "the purely legal question whether the defendants are entitled to qualified immunity on the facts that the

---

[1] *Kinney v. Weaver*, 367 F.3d 337, 346 (5th Cir. 2004) (en banc) (alteration in original) (internal quotation marks omitted) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)).

[2] *Id.* at 347.

district court found sufficiently supported in the summary judgment record."[3] Put simply, "we can review the *materiality* of any factual disputes, but not their *genuineness*."[4]

We review the materiality of the factual disputes de novo.[5] In reviewing the materiality of any factual disputes, we must assume that the plaintiffs' factual allegations are true and then determine whether the defendant is entitled to qualified immunity based on those facts.[6] "[A] defendant challenging the denial of a motion for summary judgment on the basis of qualified immunity 'must be prepared to concede the best view of the facts to the plaintiff and discuss only the legal issues raised by the appeal.'"[7]

In this case, the district court did not state the facts that it found to be disputed. Instead, it denied Wharton's motion for summary judgment on qualified-immunity grounds because "genuine issues of material fact exist as to whether defendant Wharton's conduct was objectively unreasonable under the circumstances." In these circumstances, "[w]e can either scour the record and determine what facts the plaintiff may be able to prove at trial and proceed to resolve the legal issues, or remand so that the trial court can clarify the order."[8] In light of the limited record in this case, we will do the former.[9]

---

[3] *Hernandez v. Tex. Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 878 (5th Cir. 2004) (citing *Kinney*, 367 F.3d at 347).

[4] *Kinney*, 367 F.3d at 346 (quoting *Wagner v. Bay City*, 227 F.3d 316, 320 (5th Cir. 2000)) (internal quotation marks omitted).

[5] *Id.* at 349.

[6] *Freeman v. Gore*, 483 F.3d 404, 410 (5th Cir. 2007).

[7] *Id.* (quoting *Gonzalez v. Dallas Cnty.*, 249 F.3d 406, 411 (5th Cir. 2001)).

[8] *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009) (quoting *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 456 (5th Cir. 2001)) (internal quotation marks omitted).

[9] *See id.*

No. 11-60693

## B

"The doctrine of qualified immunity protects government officials 'from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[10]  We conduct a two-prong inquiry in determining whether an official is entitled to qualified immunity.  First, we determine whether the official's conduct violated a constitutional right of the plaintiff.[11]  Second, we determine whether that right was clearly established at the time of the violation.[12]  We may conduct this inquiry in either sequence.[13]

Wharton readily admits in his reply brief that he must concede the best view of the facts to the plaintiffs.  However, his brief is replete with instances in which he appears to argue that the evidence supports his view of the facts and not the plaintiffs'.  Therefore, he argues, he is entitled to summary judgment on the ground that he has qualified immunity.  To the extent that Wharton challenges the sufficiency of the record evidence to support the plaintiffs' view of the facts, we lack jurisdiction; we will not review the genuineness of factual disputes on appeal.  Accordingly, we turn to the materiality of those factual disputes.

## 1

Wharton first argues that he had probable cause to arrest both Greg and Tonia Massey.  He also argues that even if he did not have probable cause, he

---

[10] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[11] *Manis*, 585 F.3d at 843.

[12] *Id.*

[13] *Pearson*, 555 U.S. at 236.

reasonably but mistakenly concluded that probable cause was present, so he is entitled to qualified immunity.

In order for an arrest to be lawful, it must be supported by probable cause.[14] "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge *at the moment of arrest* are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense."[15]  A police officer has qualified immunity if he "reasonably but mistakenly conclude[s] that probable cause is present."[16]  If Wharton could reasonably have believed Greg's and Tonia's arrests to be lawful in light of the clearly established law at the time, then he has qualified immunity.[17]

Greg Massey was arrested and charged with resisting arrest[18] and disorderly conduct.[19] Probable cause did not exist based on either crime—taking the plaintiffs' allegations as true, Greg was attempting to comply with police commands at all times.  When he first drove up to the crime scene, he did not have time to "promptly comply with or obey"[20] the officers' contradictory

---

[14] *Flores v. City of Palacios*, 381 F.3d 391, 402 (5th Cir. 2004) (citing *Hinshaw v. Doffer*, 785 F.2d 1260, 1266 (5th Cir. 1986)).

[15] *Id.* (quoting *United States v. Levine*, 80 F.3d 129, 132 (5th Cir. 1996)) (internal quotation marks omitted).

[16] *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).

[17] *See id.*

[18] MISS. CODE ANN. § 97-9-73 ("It shall be unlawful for any person to obstruct or resist by force, or violence, or threats, or in any other manner, his lawful arrest or the lawful arrest of another person by any state, local or federal law enforcement officer . . . .").

[19] *Id.* § 97-35-7 (making it a crime to "fail[] or refuse[] to promptly comply with or obey a request, command, or order of a law enforcement officer" in a variety of circumstances).

[20] *Id.*

commands, and when he drove away, he claims that he was not fleeing but was obeying Wharton's order to drive the ATV up the hill. He was neither disobeying Wharton's commands nor attempting to resist his lawful arrest. Accepting these facts as present, probable cause did not exist, and no officer reasonably could believe otherwise.[21]

Similarly, no officer reasonably could believe that an arrest of Tonia Massey would be lawful. Taking the plaintiffs' allegations as true, Tonia Massey obeyed the officers at all time with the exception of remaining quiet, which, as we discuss below, cannot support probable cause for arrest. She did not commit disorderly conduct, nor did she resist the lawful arrest of either herself or her son. No reasonable officer could believe that probable cause existed to arrest Tonia Massey in this situation.

Wharton appears to argue that Tonia Massey was not arrested, but was merely detained pursuant to *Terry v. Ohio*, which allows brief investigatory stops based on reasonable suspicion.[22] However, it is clear that a detention of significant length may transform an investigative detention into an arrest.[23] The investigative stop can "last no longer than is necessary to effectuate the

---

[21] *See Sullivan v. Allred*, 297 F. App'x 339, 342 (5th Cir. 2008) (unpublished) (holding, with respect to actions that predate those at issue here in a case arising in Texas, that genuine issues of material fact exist that preclude summary judgment on arrest without probable cause and excessive force grounds when, accepting the plaintiff's view of the facts, the plaintiff was approached by a police officer, told to leave, and as he was walking away, the police officer employed a choke hold, brought him to the floor, and arrested him).

[22] 392 U.S. 1, 30 (1968); *see also United States v. Place*, 462 U.S. 696, 702 (1983).

[23] *See United States v. Shabazz*, 993 F.2d 431, 437 (5th Cir. 1993) ("We recognize that a detention may be of excessively long duration even though the officers have not completed and continue to pursue investigation of the matters justifying its initiation. . . . A prolonged investigative detention may be tantamount to a *de facto* arrest, a more intrusive custodial state which must be based upon probable cause rather than mere reasonable suspicion." (internal citations omitted)).

purpose of the stop."[24]  In *United States v. Place*, the Supreme Court held that a seizure of a man's luggage for ninety minutes required probable cause, not reasonable suspicion, and noted, "[A]lthough we decline to adopt any outside time limitation for a permissible *Terry* stop, we have never approved a seizure of the person for the prolonged 90-minute period involved here and cannot do so on the facts presented by this case."[25]  Tonia Massey was handcuffed and put in the back of a police car, she claims, for two-and-a-half to three hours.  There is no indication that the police were investigating her for anything.  Under these circumstances, any reasonable officer should have known that Tonia Massey's seizure required probable cause, not reasonable suspicion.[26]

**2**

Wharton also argues that Greg and Tonia Massey were not unreasonably seized in violation of the Fourth Amendment.  He argues that he had probable cause to arrest them, and the seizure did not involve "deadly force, an unannounced entry into a home, entry into a home without a warrant, or physical penetration of the body."[27]  He also argues that the plaintiffs only pleaded a claim for unreasonable seizure, but did not plead a claim of excessive force.  However, if they did plead claims for excessive force, he asserts that his conduct in subduing both Greg and Tonia Massey was objectively reasonable.

As an initial matter, we reject Wharton's argument that the plaintiffs did not plead excessive force claims.  The plaintiffs alleged that Wharton violated

---

[24] *Florida v. Royer*, 460 U.S. 491, 500 (1983).

[25] 462 U.S. at 709-10.

[26] *See Freeman v. Gore*, 483 F.3d 404, 413 (5th Cir. 2007) (holding that the plaintiff had been arrested, not merely detained, when the officer threatened the plaintiff with arrest, the plaintiff invited arrest, and the officer handcuffed her and put her in the back of a police car for thirty to forty-five minutes).

[27] *See Atwater v. City of Lago Vista*, 195 F.3d 242, 244-45 (5th Cir. 1999) (en banc), *aff'd*, 532 U.S. 318 (2001).

their "right to be free from arrest without probable cause and to be free from unreasonable seizure of the person" in violation of the Fourth Amendment. An excessive force claim is analyzed under the Fourth Amendment's reasonableness standard,[28] and the plaintiffs pleaded a claim for unreasonable seizure. The plaintiffs have also pleaded facts showing that their claim is plausible.

An excessive force claim is "separate and distinct from" a claim for unlawful arrest and must therefore be analyzed without regard to whether the arrest was justified,[29] although the evidence may overlap.[30] To prove a claim for excessive force, the plaintiff must show "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable."[31] In this case, Wharton has not argued that the plaintiffs cannot show an injury resulting from the use of force. Rather, Wharton argues that his use of force was objectively reasonable. In assessing whether the use of force was reasonable, we must assess the totality of the circumstances.[32] Several important factors are "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade

---

[28] *Graham v. M.S. Connor*, 490 U.S. 386, 395 (1989).

[29] *Freeman*, 483 F.3d at 417.

[30] *Cortez v. McCauley*, 478 F.3d 1108, 1127 (10th Cir. 2007).

[31] *Elizondo v. Green*, 671 F.3d 506, 510 (5th Cir. 2012) (quoting *Collier v. Montgomery*, 569 F.3d 214, 218 (5th Cir. 2009)) (internal quotation marks omitted).

[32] *Id.* (citing *Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008)).

No. 11-60693

arrest by flight."[33]  These factors were clearly established at the time of the events here.[34]

We confronted a similar case involving a taser in *Autin v. Baytown*, decided almost two years before the actions at issue here.[35]  In *Autin*, the plaintiff, suspecting something was wrong, used a brick to knock on the door of her brother's house.[36]  When he did not answer, she called the police and requested an officer's help.[37]  The officer arrived and told her he could not help her, and as she picked up the brick and approached the door again, the officer deployed his taser on her.[38]  It malfunctioned, so he attempted a contact tase.[39] The taser malfunctioned again.[40]  He repeatedly contact tased the plaintiff while forcing her to the ground.[41]  She hit her head on a pole and suffered a laceration.[42]  We affirmed the district court's denial of the officer's motion for summary judgment because the plaintiff was at most committing the minor crime of criminal mischief, was not a threat to the officer or others, and was not

---

[33] *Graham*, 490 U.S. at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)).

[34] *See Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008) (applying the *Graham* factors to events that precede those at issue here); *Autin v. Baytown*, 174 F. App'x 183, 186 (5th Cir. 2005) (unpublished).

[35] 174 F. App'x 183 (5th Cir. 2005) (unpublished).

[36] *Id.* at 183.

[37] *Id.* at 184.

[38] *Id.*

[39] *Id.*

[40] *Id.*

[41] *Id.*

[42] *Id.*

resisting arrest.[43]  Because none of the factors above supported the officer, we held that the officer was not entitled to qualified immunity.[44]

In light of *Autin* and the clearly established *Graham* factors, no reasonable police officer would believe the force used against Greg Massey to be reasonable under the circumstances.  Taking the plaintiffs' assertions as true, Greg Massey was arrested for disorderly conduct and resisting arrest although he was attempting to comply with the officers' commands, he was not a threat to the officers or others, and he was not attempting to flee, but was driving away at the command of Wharton.  Nonetheless, Wharton used his taser twice and his pepper spray once to subdue Greg.  None of the three factors supports Wharton, so no reasonable officer would believe the force used here to be reasonable.

For similar reasons, Wharton is presently not entitled to qualified immunity on Tonia Massey's excessive force claim.  Taking all of the plaintiffs' factual assertions as true, she was arrested for disorderly conduct and resisting arrest although she complied with the officers' instructions, she did not pose a threat to the officers or anyone else, and she was not resisting arrest.  Although the test for excessive force is quite fact-intensive, it is clear enough that no reasonable officer would believe the force used against her to be reasonable.[45]

---

[43] *Id.* at 185.

[44] *Id.* at 186.

[45] *See Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008) (holding that the law was clearly established prior to the events at issue here that "the permissible degree of force depends on the severity of the crime at issue, whether the suspect posed a threat to the officer's safety, and whether the suspect was resisting arrest or attempting to flee," and consequently that the officer "should have known that he could not forcefully slam [the plaintiff's] face into a vehicle while she was restrained and subdued."); *see also Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (holding that the court of appeals erred in finding "fair warning" in the general tests of *Graham* and *Garner*, but noting that, in the obvious case, these general standards can clearly establish the answer without further case law).

No. 11-60693

**3**

Finally, Wharton claims that Tonia Massey cannot make out a violation of her First Amendment rights. The Supreme Court has held that "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers."[46] "The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics from which we distinguish a free nation from a police state."[47] The validity of a First Amendment claim may depend on whether probable cause exists for the arrest. "If [probable cause] exists, any argument that the arrestee's speech as opposed to her criminal conduct was the motivation for her arrest must fail, no matter how clearly that speech may be protected by the First Amendment."[48]

We confronted a somewhat similar situation in *Enlow v. Tishomingo County, Mississippi*.[49] In *Enlow*, the police initiated a gambling raid on a building owned by the plaintiff.[50] The facts were substantially disputed. According to the plaintiff, as the police were conducting the raid, he merely asked two questions about the raid, remained silent after being told to be quiet, and took a picture of the raid with a bystander's camera, after which he was arrested.[51] We held that because this speech failed to "rise above 'inconvenience, annoyance, or unrest,' . . . or constitute an incitement to immediate lawless

---

[46] *City of Houston, Tex. v. Hill*, 482 U.S. 451, 461 (1987).

[47] *Id.* at 462-63.

[48] *Mesa v. Prejean*, 543 F.3d 264, 273 (5th Cir. 2008).

[49] 962 F.2d 501 (5th Cir. 1992).

[50] *Id.* at 503.

[51] *Id.* at 509.

13

No. 11-60693

action," Enlow had stated a cognizable First Amendment claim.[52] We further affirmed the district court's denial of summary judgment on qualified-immunity grounds because the facts were disputed as to whether the defendant arrested the plaintiff because he feared that the plaintiff would incite a riot or because he had exercised his First Amendment rights.[53]

Here, if Wharton had probable cause to arrest Tonia Massey, then her First Amendment claims must fail.  However, issues of material fact exist as to whether Wharton had probable cause to arrest Tonia Massey.  Accepting the plaintiffs' allegations as true, then the plaintiffs have asserted a First Amendment violation. Tonia Massey did nothing but tell the police officers to leave her son alone.  Her speech neither rises above inconvenience, annoyance, or unrest, nor does it constitute an incitement to immediate lawless action. Furthermore, the law was clearly established at the time of the actions here. The validity of Tonia Massey's First Amendment claim therefore "hinges on probable cause for her arrest," and this claim cannot be resolved on summary judgment.[54]

*    *    *

For the foregoing reasons, the district court's denial of Wharton's motion for summary judgment is AFFIRMED.

---

[52] *Id.* (quoting *Terminiello v. City of Chicago*, 337 U.S. 1, 4 (1949)).

[53] *Id.* at 509-10.

[54] *See Mesa v. Prejean*, 543 F.3d 264, 273 (5th Cir. 2008).

14