RHESA H. BARKSDALE, Circuit Judge,
Dissenting:
Qualified immunity promotes the necessary, effective, and efficient performance of governmental duties, Harlow v. Fitzgerald, 457 U.S. 800, 807, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), by shielding from suit “all but the plainly incompetent or those *765 who knowingly violate the law”. Brum-field v. Hollins, 551 F.3d 322, 326 (5th Cir.2008) (internal citation and quotation marks omitted). In holding there is a genuine dispute of material fact, and therefore dismissing this interlocutory appeal for lack of jurisdiction, my able colleagues in the majority ignore these doctrinal underpinnings and engage in the very analysis they recognize we cannot do: they scrutinize the conduct of Officers Burke and Guedry (the Officers) with the clarity of hindsight and from the safety of judges’ chambers. Sadly, they engage in judicial “Monday morning quarterbacking” at its worst. When this summary-judgment record is reviewed correctly, the Officers’ application of measured force, in a tense, dangerous, and hostile environment, in August 2007 to lawfully arrest a non-compliant suspect was objectively reasonable, shielding them with qualified immunity. Therefore, I must respectfully dissent.
I.
For the Officers’ summary-judgment motion, both sides rely on three video recordings taken from police cruisers. The primary recording is from Officer Torres’ dashboard camera; he was the Officer who pulled the vehicle over. That recording captured passenger Mario Cole’s continuing, insulting, and outrageous conduct in resisting arrest; driver Willie Cole’s and passenger Newman’s refusing to obey Officer Torres’ orders to remain inside the vehicle; Officer Guedry’s lawfully searching Newman; and, after a struggle erupted diming that search, the Officers’ using measured force and Newman’s resulting arrest. The video neither corroborates nor discredits either side’s account, discussed infra, of precisely what provoked that struggle. But, it does plainly show the precipitant moment the Officers reacted.
The Officers also supported their motion with, inter alia: Officer Guedry’s deposition testimony, in which he relates witnessing Newman’s refusing to obey Officer Torres’ orders; and affidavits by Detective Tolley, a former police training officer familiar with the Beaumont Police Department’s use-of-force policy. Detective Tol-ley provided frame-by-frame analysis of, inter alia, the 33 seconds it took to initiate Newman’s search and effect his arrest. Additionally, the Officers supported their motion with an expert report prepared by Duncan, Director of the Lamar Institute of Technology Regional Police Academy. Duncan, a three-decade law-enforcement veteran, described the reasonableness of the Officers’ actions under the rapidly-evolving circumstances as requiring split-second, potentially life-or-death decisions.
Newman opposed the Officers’ summary-judgment motion with: his earlier testimony (which largely parrots the allegations in his civil complaint) in the Officers’ criminal trial; an affidavit and deposition of Grafton, an associate professor of criminal justice and former law-enforcement officer, which impugns the Officers’ account as false and contends the video failed to corroborate that account; and Officer Burke’s deposition testimony, in which he relates Newman’s failing to comply after each baton strike by pushing off a vehicle into the Officers and by attempting to strike Officer Burke.
II.
There is no genuine dispute of material fact. Pursuant to the material facts and controlling law, the Officers are entitled, through summary judgment, to qualified immunity against the excessive-force claim and official immunity against the state-law claims.
A.
Qualified immunity shields public officials from suit, rather than merely provid *766 ing an affirmative defense to liability. Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); Backe v. LeBlanc, 691 F.3d 645, 648 (5th Cir.2012). To abrogate this immunity, plaintiff must show, through the well-known, two-prong test: first, the official violated a statutory or constitutional right; and second, the official’s “actions [constituted] objectively unreasonable conduct in [the] light of clearly established law at the time of the conduct in question”. Brumfield, 551 F.3d at 326.
In the excessive-force context at issue here, although the long-established two prongs contain similar “objective reasonableness” elements, they remain distinct and deserve independent inquiry. Id. Importantly, the sequence of analysis is immaterial, Pearson v. Callahan, 555 U.S. 223, 224, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), and qualified immunity may be granted without deciding the first prong, Kovacic v. Villarreal, 628 F.3d 209, 213 (5th Cir.2010). Deciding the second prong first is often advisable; for example, if, as here, a constitutional right is claimed to have been violated (first prong), “this approach [of first addressing the second prong] comports with the usual reluctance to decide constitutional questions unnecessarily”. Reichle v. Howards, — U.S. -, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012).
Therefore, the Officers are entitled to qualified immunity, through summary judgment, unless Newman shows a genuine dispute of material fact exists on whether: (1) for his excessive-force claim, he was injured as a result of force that was excessive to the need and objectively unreasonable, and (2) the application of that force was objectively unreasonable in the light of then clearly-established law. Avoiding the constitutional issue and proceeding directly to the second prong, id., the Officers are entitled to qualified immunity because: Newman has not met his summary-judgment burden to show a genuine dispute of material fact; and, considering the material facts, the Officers’ conduct was not objectively unreasonable in the light of then clearly-established law.
Contrary to the majority opinion at 764, there is no genuine dispute of material fact; therefore, we have jurisdiction for this interlocutory appeal. E.g., Behrens v. Pelletier, 516 U.S. 299, 312-13, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) (jurisdiction to review summary-judgment denial determining conduct violated clearly-established law). The single disputed fact, which is not material, concerns what precisely provoked the Officers’ measured application of force. They maintain Newman reached for his waistband during a lawful search and resisted a lawful arrest; Newman maintains he was struck and Tased in retaliation for his admitted extremely disgusting, offensive, insulting, and provocative remark.
Whatever the catalyst, the majority glosses over that Newman, by refusing Officer Torres’ orders to remain inside the vehicle, subjected himself to lawful arrest. E.g., Tex. Penal Code Ann. § 38.15(a) (interference with peace officer a misdemean- or); Tex. Transp. Code Ann. § 542.501 (refusal to comply with police officer’s lawful orders a misdemeanor). Although the video is inconclusive on what precisely provoked the measured application of force, cf. Scott v. Harris, 550 U.S. 372, 380-81, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (video evidence accorded greater weight when it plainly contradicts a party’s assertion), it plainly shows Newman’s refusing to obey Officer Torres’ orders, which discredits his asserting he complied with Officers Burke and Guedry during the search and arrest, id. Also plainly shown is Officer Guedry’s reacting suddenly while searching Newman, and Officer Burke’s *767 assisting Officer Guedry after noticing the ensuing struggle.
Along this line, the majority incorrectly states Officer Guedry was unaware Newman refused orders to remain in the vehicle. Maj. Opn. at 762, n. 5. Officer Gued-ry testified in his deposition that, upon his arrival on the scene, he heard an order to “get back in the vehicle”, and noted Newman’s non-compliance as he (Officer Gued-ry) approached. Because Newman committed a misdemeanor in Officer Guedry’s presence, further probable cause to arrest attached. And, because Officer Guedry had initiated the search, it was reasonable for Officer Burke to assist without independently verifying its lawfulness. Probable cause notwithstanding, and regardless of the alleged provocation, Newman had no right to resist. Tex. Penal Code Ann. § 38.03 (resisting unlawful arrest a misdemeanor).
The majority reduces the inquiry to a single question: whether the Officers applied more force than necessary to effectuate Newman’s arrest. Dispensing with qualified immunity’s second prong by casting this an “obvious case”, the majority hangs its analysis on Graham’s well-known excessive-force factors. Maj. Opn. at 764. But the cases it cites to support this proposition, Maj. Opn. at 764, n. 8, are nonprecedential and distinguishable on their facts: Anderson v. McCaleb, 480 Fed.Appx. 768 (5th Cir.2012) (no qualified immunity when force applied after suspect handcuffed and laid on ground); Massey v. Wharton, 477 Fed.Appx. 256 (5th Cir.2012) (no qualified immunity when no probable cause to arrest); Autin v. City of Baytown, 174 Fed.Appx. 183 (5th Cir.2005) (no qualified immunity when 59-year-old woman Tased repeatedly after being subdued).
A proper application of qualified immunity’s second prong leads to holding the Officers’ conduct was not objectively unreasonable in the light of clearly-established excessive-force law. A right is sufficiently clear, and thus “clearly established”, when “every ‘reasonable official would have understood that what he is doing violates that right’ ”. Ashcroft v. al-Kidd, — U.S. -, 131 S.Ct. 2074, 2078, 179 L.Ed.2d 1149 (2011) (quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). Re-stated, “existing precedent must have placed the statutory or constitutional question beyond debate”. al-Kidd, 131 S.Ct. at 2083. This “clearly established” standard protects the necessary balance between vindication of constitutional or statutory rights and effective performance of governmental duties by ensuring officials can “reasonably ... anticipate when their conduct may give rise to liability for damages”. Davis v. Scherer, 468 U.S. 183, 195, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984).
The majority’s incantation that the right to freedom from excessive force was clearly established at the time of Newman’s arrest, Maj. Opn. at 762-63, disregards the Supreme Court’s admonition not to define clearly-established rights at a high level of generality. al-Kidd, 131 S.Ct: at 2084. The fact-specific nature of excessive-force claims, Deville v. Marcantel, 567 F.3d 156,167 (5th Cir.2009), requires viewing the Officers’ actions prospectively, in the light of “the circumstances that appeared to the officer ”, to determine whether such conduct was objectively reasonable. Snyder v. Trepagnier, 142 F.3d 791, 800 (5th Cir.1998) (emphasis in original) (internal citation omitted) (Smith, J.).
Equally important is the Officers’ concomitant, obvious right to use “measured and ascending responses”, calibrated to physical and verbal resistance. Galvan v. City of San Antonio, 435 Fed.Appx. 309, 311 (5th Cir.2010). That took place here. *768 (Relevant to this use of measured force, not long after the challenged conduct, a handcuffed Newman can be seen walking easily to a police vehicle with no apparent injury.)
Therefore, the Officers are entitled to qualified immunity unless it was clearly established that the measured and ascending force they applied would have been objectively unreasonable to “every reasonable official” in like circumstances, alKidd, 131 S.Ct. at 2078 (internal citation and quotation marks omitted) (emphasis added). Against this legal backdrop, this claim cannot be placed among those where excessive-force plaintiffs overcame the qualified-immunity defense. E.g., Spann v. Rainey, 987 F.2d 1110 (5th Cir.1993) (no qualified immunity on summary judgment when arrestee in diabetic coma beaten on head with flashlights); Tarver v. City of Edna, 410 F.3d 745 (5th Cir.2005) (same, when plaintiff provided witness testimony that officer slammed door on plaintiffs head in retaliation); Deville, 567 F.3d 156 (same, when two officers shattered window of driver who refused to exit vehicle, threw her against side of vehicle before arrest, and applied handcuffs so tightly four reconstructive surgeries were required); Petta v. Rivera, 143 F.3d 895 (5th Cir.1998) (same, when officer shattered window, brandished revolver, and fired round at vehicle occupied by two children whose driver refused to exit after minor traffic stop).
The majority cites Deville as justification for holding there is a genuine issue of material fact on whether the Officers’ conduct was objectively unreasonable. Maj. Opn. at 762-64. Yet Deville is so factually distinguishable from the situation at hand that the majority vitiates its own conclusion. In Deville, our court reversed the district court’s granting summary judgment on qualified-immunity grounds. 567 F.3d 156. An officer stopped the Deville plaintiff for speeding, and a second, off-duty officer responded. The second officer demanded that plaintiff roll down her window, but shattered it before she was able to comply; the plaintiff maintained she was never asked to sign a ticket, never threatened to flee, and the minor child inside her vehicle was never in danger. Id. Viewing this account — which the officers disputed — in the light most favorable to her, our court held it was objectively unreasonable for the officers, pursuant to a traffic stop unsupported by probable cause, to shatter her vehicle window, forcibly extricate her, slam her against the vehicle, and apply handcuffs so tightly four reconstructive surgeries were required (among other significant injuries). Id.
Obviously, the Officers here were confronted with a situation far more volatile than that in Deville. Therefore, and unlike the Deville officers, it was not objectively unreasonable for the Officers to forego negotiation; indeed, Newman had already refused to comply with Officer Torres’ orders. Moreover, the Officers were reacting to Newman’s physical resistance, unlike the Deville officers’ application of force against passive resistance. Importantly, and unlike Newman, the De-ville plaintiff had the state-law right to resist an unlawful arrest (i.e. arrest unsupported by probable cause). Id.
The circumstances confronting the Officers put further distance between this action and Deville. Officers Burke and Guedry responded at midnight, to a high-crime area, where the first two Officers at the scene were outnumbered and struggling with an extremely non-compliant, physically-combative, and verbally-abusive arrestee with outstanding arrest warrants for unpaid traffic tickets. When Officer Burke arrived, Officer Guedry was preparing to search Newman. In the ensuing struggle, Officer Burke employed his ba *769 ton in accordance with department policy, striking only at the upper arm and leg, to avoid causing Newman serious or permanent injury. Unable to control Newman’s hands, Officer Guedry energized his Taser. After Officer Guedry used the Taser, Officer Burke re-holstered his baton and ceased all force. Newman submitted only after being Tased a third time.
No reasonable officer in Officer Burke’s or Guedry’s position, acting under those circumstances, could “reasonably [have] anticipate^] ... [his] conduct [would] give rise to liability for damages”. Davis, 468 U.S. at 195, 104 S.Ct. 8012. (The majority incorrectly states that, when Newman was on the ground, Officer Guedry dragged him while handcuffed. Maj. Opn. at 760. Officer Torres’ video instead shows Officer Guedry wisely moved Newman out of an active traffic lane. In any event, this fact is not material.)
In spite of the on-scene tension, Newman’s refusing to obey Officer Torres, and the rapid succession of events (which his video clearly establishes), the majority parades its tactical competency by suggesting Newman could have been arrested through “physical skill, negotiation, or [ ] commands”. Maj. Opn. at 763. Needless to say, neither of my esteemed colleagues was at the scene. This is the very type of post-hoc, subjective analysis that Graham and its progeny understandably condemn.
B.
For official immunity from the state-law claims, and as the majority recognizes, Texas’ “good faith” element is analogous to qualified immunity’s “objective reasonableness”. Maj. Opn. at 766. Therefore, the Officers are entitled to official immunity against the state-law claims.
III.
“It is not the critic who counts .... The credit belongs to [those] actually in the arena ... spending] [themselves] for a worthy cause”. Theodore Roosevelt, Address at the Sorbonne, Paris: Citizenship in a Republic (28 Apr. 1910). Most regrettably, the tone and tenor of the majority opinion convey sarcasm and hostility for the Officers’ conduct in a volatile, hostile, and dangerous situation; a situation in which split-second decisions must be made for the safety of all involved — citizen and police. The conduct resulting from those decisions may not be polite and pretty, but it is necessary. And, it may require more than hurt feelings. Nor is the interaction between officers and citizens a debating society. (In that regard, at oral argument, Newman’s counsel maintained Officers at the scene should have welcomed Newman’s trying to calm the situation, instead of obeying the clear order to return inside his vehicle. Simply put, this is an absurd position.)
And, more to the point here, the Officers’ conduct is shielded by qualified immunity. In the light of this summary-judgment record, the Officers are entitled to qualified immunity against the excessive-force claim and to official immunity against the state-law claims. To hold otherwise is to turn a blind eye to the material facts at hand (which are not disputed) and the controlling law. Therefore, I must respectfully dissent.