**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
March 15, 2012

No. 11-40624

Lyle W. Cayce
Clerk

DERRICK NEWMAN,

Plaintiff - Appellant,

v.

FRANK C. COFFIN, JR.; JAMES KYLE HAYES; CITY OF BEAUMONT,

Defendants - Appellees.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 1:10-CV-795

Before BENAVIDES, STEWART, and GRAVES, Circuit Judges.

PER CURIAM:[*]

Derrick Newman filed a lawsuit challenging his detention by officers from the City of Beaumont Police Department. While Newman alleged that many defendants were liable, the only issue before us on this appeal relates to the section 1983 claims Newman brought against the three appellees in this proceeding: Frank C. Coffin, Jr., James Kyle Hayes, and the City of Beaumont (collectively, the "municipal defendants"). We must decide whether Newman filed his section 1983 claims before the statute of limitations ran. Because we

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-40624

conclude that the statute of limitations had run before Newman filed his claims, we AFFIRM the district court's judgment.

## I.

On August 24, 2007, Newman and Mario Cole ("Mario") were passengers in a vehicle driven by Willie Cole ("Willie"). The vehicle was stopped by Beaumont Police Officer Jason J. Torres for failing to properly yield to oncoming traffic while making a turn. During the stop, Torres learned that Mario had an outstanding warrant for unpaid traffic tickets. Mario resisted the efforts of Torres and Officer John David Brown, who had arrived on the scene, to arrest him. Newman and Willie each stepped out of the car, for the purpose, Newman contends, of calming Mario down.

Several other police officers–Officers Charles J. Duchamp III, James Cody Guedry, and David Todd Burke–arrived on the scene. Guedry ordered Newman to get behind the vehicle and submit to a pat down. During this search, Burke allegedly beat Newman with a wooden baton 13 times and Guedry used a taser on Newman three times, twice at the direction of Torres. After Newman fell to the ground, he was handcuffed and Guedry dragged him across the road to the sidewalk, placing his boot on Newman's back.

On November 17, 2008, Newman commenced a state law action in Texas state court against Guedry, Duchamp, Burke, Torres, and Brown. At that point, Newman had not yet asserted any claims against the municipal defendants. In the discovery phase of this proceeding, Newman submitted open records requests to the City, including requests to Torres and to Chief Coffin of the Beaumont Police Department ("BPD") on July 3, 2008; to Lieutenant George Christian Schuldt of the BPD on November 29, 2009; and another request to Torres on May 19, 2010. Newman also deposed Coffin on May 14, 2010, May 21, 2010, and June 17, 2010; Beaumont's City Manager Hayes on May 14, 2010; Guedry on March 16, 2010; Brown on March 17, 2010; and Torres on March 17, 2010.

2

No. 11-40624

Newman's section 1983 claim against the municipal defendants challenges the BPD's "zero tolerance policy," which Newman argues is unconstitutional. He did not learn of the zero tolerance policy until it was publicly discussed at a criminal trial. Because of their detention of Newman, Burke and Guedry were tried separately for the crime of official oppression. At Guedry's trial in November 2010, Schuldt testified that department policy requires police officers to show zero tolerance towards any criminal activity in high-crime areas. In areas that are not classified as high crime, conversely, police officers have discretion not to issue citations for minor offenses. The area in which Newman was detained was considered a high-crime area. Newman contends that the zero tolerance policy is unconstitutionally "directed at citizens such as" Newman.

After learning of the zero tolerance policy, Newman promptly undertook discovery to investigate its relationship to his cause of action. Newman deposed Officer Shawn Kevin Tolley, the BPD's expert on police procedures, on December 7, 2010. Tolley explained that high-ranking officers meet weekly to designate zero tolerance areas based on previous crime statistics. In these zero tolerance areas, patrols are more frequent and enforcement is stricter.

On November 17, 2010, Newman filed an amended complaint in state court adding claims pursuant to 42 U.S.C. § 1983. The case was removed to federal court on December 8, 2010. Newman then filed a First Amended Complaint adding claims against the municipal defendants in their official and individual capacities on January 3, 2011. This complaint alleged constitutional violations based on the BPD's zero tolerance policy.[1]

---

[1]  Specifically, the First Amended Complaint alleges the following:

Police officers employed and controlled by the City of Beaumont have, on multiple occasions, subjected citizens of the City to unconstitutional actions, including searches, arrests, and detentions without probable cause, and the use of excessive force in the course of making arrests. The Defendant police officers in this case violated such federal constitutional rights of the plaintiff.

No. 11-40624

The municipal defendants moved to dismiss on several grounds, including the running of the statute of limitations. Newman responded to the motion to dismiss and filed a Second Amended Complaint.[2] The district court granted the municipal defendants' motion to dismiss on May 4, 2011, ruling that Newman's action against the municipal defendants was barred by the statute of limitations. After the district court finalized its judgment under Rule 54(b) on May 19, 2011, Newman filed a timely notice of appeal. This appeal followed.

## II.

### A.

This court reviews a district court's order granting a motion to dismiss de novo. *Castro v. Collecto, Inc.,* 634 F.3d 779, 783 (5th Cir. 2011).

### B.

"A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003). Whether a plaintiff exercised due diligence in a particular case is a question of fact, and its resolution depends in each case upon the circumstances faced by the plaintiff. *Sumner v. Land & Leisure, Inc.*, 664 F.2d 965, 970 (5th Cir. 1981).

---

The City of Beaumont, Defendant Coffin, as Chief of Police for the City, and Defendant Hayes, as City Manager for the City of Beaumont, have adopted and implemented an informal, unwritten policy whereby the police officers of the City are instructed, encouraged, and permitted to engage in unconstitutional conduct of the kind described in the preceding paragraph, directed especially at citizens such as the Plaintiff in the area of the City in which the acts giving rise to this action occurred.

[2] While many of its allegations repeat the allegations of the First Amended Complaint, the Second Amended Complaint adds that the zero tolerance policy of the BPD "is carried out more frequently in areas of the City with high African-American populations, such as the South End, where the events described in the preceding paragraphs occurred, than in areas of the City with lower populations of African-Americans."

No. 11-40624

Federal law controls the date of accrual for actions brought under section 1983. *Piotrowski v. City of Hous.,* 51 F.3d 512, 516 n.10 (5th Cir. 1995) [*Piotrowski I*]. This court has explained the governing law for deciding when causes of action brought under section 1983 accrue:

> Under federal law, the [limitations] period begins to run the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured. A plaintiff's awareness encompasses two elements: (1) the existence of the injury; and (2) causation, that is, the connection between the injury and the defendant's actions. A plaintiff need not realize that a legal cause of action exists; a plaintiff need only know the facts that would support a claim. Moreover, a plaintiff need not have actual knowledge if the circumstances would lead a reasonable person to investigate further.

*Piotrowski I*, 51 F.3d at 516 (internal citations and quotation marks omitted); *see also Piotrowski v. City of Hous.*, 237 F.3d 567, 576 (5th Cir. 2001) [*Piotrowski II*]. Put another way, "the limitations period commences when the aggrieved party has either knowledge of the violation or notice of facts which, in the exercise of due diligence, would have led to actual knowledge thereof." *Jensen v. Snellings*, 841 F.2d 600, 606 (5th Cir. 1988) (internal quotation marks omitted).

Because the statute of limitations for actions brought under section 1983 is governed by the statute of limitations for personal injury actions in the state where the challenged conduct occurred, Texas's two-year statute of limitations applies to this case. *See, e.g., Piotrowski I*, 51 F.3d at 515 n.5.

## C.

Newman contends that the district court erroneously concluded that his cause of action accrued on the date he was detained. As Newman points out, causes of action do not accrue until the plaintiff learns both that he was injured and who caused the injury. *See Piotrowski I*, 51 F.3d at 516. While Newman learned that he was injured on the day he was forcibly detained, he maintains

that he only learned who caused his injury–that is, the municipal defendants, since they are responsible for the zero tolerance policy–when Schuldt testified during Guerdy's criminal trial. Therefore, he posits that his cause of action did not accrue until the date of the criminal trial.

For the purposes of deciding when a statute of limitation accrues, however, actual knowledge is not controlling. Our precedent establishes that individuals who suffer an injury have a duty to exercise due diligence in learning the facts underlying their injury. *Jensen*, 841 F.2d at 606. Thus, we must decide to what extent Newman's knowledge on the date of the detention triggered a duty to engage in a diligent investigation of the circumstances surrounding his detention.[3]

Here, we agree with the district court's determination that, on the date of his arrest, Newman's knowledge triggered a duty of inquiry that should have led him to learn of BPD's zero tolerance policy. Even a cursory investigation into police procedures in this case likely would have uncovered the existence of the zero tolerance policy. This investigation could have taken the form of interrogatories or depositions in which Newman's counsel asked police department officials which procedures governed the dispatch of officers.[4] The ease with which Newman was able to elicit the required information from Officer

---

[3]   Because Newman does not contend that the municipal defendants engaged in fraudulent concealment of relevant evidence, we need not consider whether the statute of limitations on Newman's claims has been equitably tolled. *Piotrowski I*, 51 F.3d at 516.

[4]   While neither party mentions this point in their briefs, the record shows that Newman did, in fact, seek information relating to whether the officers of the BPD were acting pursuant to official policy. In the identical interrogatories he addressed to Torres, Duchamp, Brown, Burke, and Guedry, Newman asked whether the officers were acting pursuant to official policy. Newman's interrogatories were not properly phrased, however, so the officers appropriately refused to respond. Newman wrote, "If you contend that the officers acted according to the established policies and customs of the Beaumont Police Department at the time of Derrick Newman['s] arrest on August 24, 2007." The officers each responded, in part, that "[t]his appears to be a statement and no question is apparent." Given the improper form of the questions, we do not take these interrogatories as evidence of Newman's due diligence.

No. 11-40624

Tolley after learning of the zero tolerance policy tends to show that such an investigation would not have been especially difficult, had Newman undertaken to understand the policies of the BPD. Under these circumstances, Newman's arrest triggered a duty to investigate his injury that should have led him to learn of the zero tolerance policy.

## III.

Accordingly, we AFFIRM the district court's judgment.