# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 15, 2012

No. 11-40237

Lyle W. Cayce
Clerk

DEWAYNE ANDERSON,

Plaintiff-Appellant

v.

J. B. MCCALEB, Chief, Longview Police Department; BRANT E. SMITH, Officer, Longview Police Department; LANIE L. SMITH, Officer, Longview Police Department,

Defendants-Appellees

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 6:09-CV-282

Before SMITH, GARZA, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Dewayne Anderson brought a Section 1983 suit against two Texas police officers and their supervisor, alleging that excessive force was used. The defendants prevailed on summary judgment on the basis that they used reasonable force to detain a fleeing suspect and that medical records contradicted allegations of injuries suffered during the arrest. We REVERSE.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-40237

## FACTUAL AND PROCEDURAL BACKGROUND

Anderson filed a civil rights complaint under 42 U.S.C. § 1983 against officers Lanie Smith and Brant Smith, alleging they each used excessive force when arresting him.[1] After the incident, Anderson pled guilty to evading arrest. That conviction does not bar this claim that excessive force was used to make the arrest. *Bush v. Strain*, 513 F.3d 492, 498 & n.13 (5th Cir. 2008).

In this Section 1983 suit, all parties consented to proceed before a magistrate judge. The judge held a hearing authorized by *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). The following is Anderson's testimony. On December 17, 2008, he was driving his car when Officers Lanie Smith and Brant Smith attempted to stop him. The officers were uniformed and in marked police cars. Instead of stopping, Anderson drove to the back of an apartment complex, got out of his car, and ran while the officers chased him. He ran into a backyard, but because he did not want to run into the woods at the edge of the yard, he turned around and held out his hands in an attempt to surrender. Anderson was holding an iPod. Officer Lanie Smith shot him with a taser and he fell to the ground. Officer Brant Smith got on top of him and hit him with a closed fist. Officer Lanie Smith continued to use the taser, shocking him five or six times. After Anderson was handcuffed, Officer Brant Smith slammed him back on the ground. That caused a taser probe to come out of his chest.

Anderson testified that he did not resist the officers' attempt to arrest him. He further claimed they never asked him to get on the ground. He did not know whether Officer Lanie Smith knew the object he was holding was an iPod. He

---

[1] Anderson also sued J. B. McCaleb, the officer who supervised the other officers. The claims against McCaleb were dismissed, and there is no appeal of that ruling.

No. 11-40237

claimed he suffered a sprained knee and a fracture of his right hand or wrist. Medical records discussed at the hearing showed that Anderson suffered a "boxer's fracture of the fifth metacarpal." On cross-examination, Anderson denied telling the technicians in the ambulance that his neck hurt because of a fall or that he was kicked. He explained that the medical staff at the hospital did not ask him about his injuries. Anderson denied telling a doctor that the fracture was an old injury, that his injuries were not caused by another person, or anything at all about what happened when he was arrested.

Officers Lanie Smith and Brant Smith both submitted affidavits about the events. In their account, Anderson ignored repeated commands to get down on the ground. In his hands was an object that resembled a weapon. Officer Lanie Smith, fearing for his safety, shot Anderson with a taser. Anderson fell backwards. The taser appeared to have limited effect, and Anderson attempted to get up. Officer Lanie Smith shocked Anderson with the taser twice more. After Anderson continued to ignore commands to lie down on his stomach, Officer Brant Smith placed his foot on Anderson's chest to hold him down. Both officers denied hitting or kicking Anderson or throwing him to the ground.

While handcuffing Anderson, the officers learned that he had been carrying not a weapon but an iPod. Officer Lanie Smith's affidavit stated that one of the taser's two probes was embedded in Anderson's thick jacket. The emergency medical services report shows that the second taser probe was in Anderson's abdomen.

The medical center's records show that Anderson suffered a metacarpal fracture, a shoulder contusion, and an acute cervical strain. The records state that he "sustained neck injury, contusion, pain with movement, tenderness,

No. 11-40237

LEFT SHOULDER AND RIGHT WRIST," and that he had an "injury or acute deformity" and "pain with movement, stiffness, tenderness" in his neck and an "injury or acute deformity, abrasion, contusion, pain" in his "MS/extremity." The records also note that he had an abrasion and contusion on his right wrist. The medical personnel diagnosed Anderson with "abrasion, closed head injury, contusion, fracture, laceration, multiple trauma, sprain, strain," and that he suffered a neck sprain. Anderson's head was, however, "normal." Additionally, the records indicate that Anderson suffered from mild degenerative disc disease in his back and an arthritic joint in his neck. The records note that "[a]t worst the symptoms were severe, earlier today, in the emergency department the symptoms were unchanged." A splint was put on Anderson's right arm.

As to the cause of the injuries, the emergency medical service report noted that Anderson complained that his "neck hur[t] from w[h]ere [he] fell." The medical center records reported that Anderson's injuries were the result of a "[f]all from standing position," that Anderson "denie[d] threats or abuse" and "injuries caused by another," and that Anderson explained he was running away from police, was shot with a taser, fell to the ground and continued to move during the arrest. Officer Lanie Smith explained that Anderson reported to him that the fracture was an old injury.

All parties filed motions for summary judgment. Along with his motion, Anderson submitted a "Patient Care Report," which appears to be the report of an emergency medical services technician showing that Anderson complained of neck and shoulder pain "from 'w[h]ere the police officer kicked me in the head.'" At the hearing, Anderson denied saying that he was kicked. The report

4

No. 11-40237

also showed that Anderson had pain in his neck and upper back, but no abnormalities anywhere else, including his head, arms, and hands.

The magistrate judge granted summary judgment in favor of the defendants on the basis of qualified immunity. He determined that the force the officers used to subdue Anderson was reasonable given that Anderson had fled, and when he stopped he turned around and put his hands up while holding an unidentified object. As for Anderson's claim that he suffered injuries after being beaten, the magistrate judge determined that Anderson's assertions were contradicted by the medical records. Accordingly, the magistrate judge reasoned, Anderson's allegations of injury and his unsupported assertions that medical staff fabricated their report amounted to no more than a scintilla of evidence, insufficient to defeat the motion for summary judgment. Anderson filed a timely notice of appeal.

## DISCUSSION

Anderson argues that the evidence when viewed in the light most favorable to him established that the officers used excessive force and injured his finger, neck, and shoulder. Thus, he contends, there is a dispute as to whether the officers' actions violated clearly established law. He also faults the magistrate judge for accepting the defendants' version of events over his and not resolving all factual disputes in his favor. The defendants argue that the undisputed evidence shows that Anderson ran from the police, had an unknown object in his hands, and the police used reasonable force to subdue him.

We review *de novo* a district court's grant of summary judgment. *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012). Summary judgment is properly granted when "the movant shows that there is no genuine dispute as to any

No. 11-40237

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In order to determine if the defendants are entitled to qualified immunity we must determine if they violated Anderson's constitutional rights in a manner that was clearly established as a constitutional violation.  *Reichle v. Howards*, 132 S. Ct. 2088, 2012 WL 1969351, at *4 (2012)

We review claims of the use of excessive force by making an inquiry into objective reasonableness.  *Elizondo v. Green*, 671 F.3d 506, 510 (5th Cir. 2012); *United States v. Brugman*, 364 F.3d 613, 616 (5th Cir. 2004).  The inquiry is guided by "the facts and circumstances confronting" the officers, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Brugman*, 364 F.3d at 616 (quoting *Graham v. Connor*, 490 U.S. 386, 396-97 (1989)).  To prove his excessive force claim, Anderson "must show: (1) an injury (2) which resulted from the use of force that was clearly excessive to the need and (3) the excessiveness of which was objectively unreasonable."  *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011) (quotation marks and citation omitted).

The magistrate judge relied on Anderson's medical records to determine that there were no genuine issues as to his claimed injuries because his testimony conflicted with his medical records.  The basis for the magistrate judge's ruling was that the medical records "starkly contradict[ed] his claims" that he suffered any injuries.

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for

6

summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). That conclusion arose in a case in which a videotape presented evidence so contradictory to the plaintiff's story that no court should have accepted the plaintiff's version on summary judgment. *Id.* at 378. The videotape in *Scott* depicted a "Hollywood-style car chase," whereas the plaintiff's viewpoint was that he "remained in control of his vehicle, slowed for turns and intersections, and typically used his indicators for turns." *Id.* at 379-80.

Accordingly, a court should reject a "plaintiff's description of the facts where the record discredits that description but should instead consider 'the facts in the light depicted by the videotape.'" *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011) (quoting *Scott*, 550 U.S. at 381).

The *Scott* situation requires that a plaintiff's factual claims be untenable based on something else in the record. We find the medical records do not blatantly contradict Anderson's testimony. True, the medical records call into question some of Anderson's assertions – for example, the evidence shows that he suffered no bruises or cuts to his face despite his allegation that Officer Brant Smith repeatedly punched him with a closed fist. There is a much larger story here, though, and large portions of it are not untenable. The records confirm his assertion that he suffered back and neck pain as well as a broken bone in his hand. They also show that he suffered a neck sprain as well as, among other things, "abrasion, closed head injury, [and] contusion."

The magistrate judge acknowledged that Anderson suffered a fracture but concluded that the medical records showed Anderson admitted at the time that the fracture was an old injury. The medical records, however, are silent as to the cause of the fracture and do not suggest that Anderson mentioned that it

was an old injury. Indeed, they show that Anderson had an abrasion and contusion on his right wrist, which is arguably consistent with Anderson's account that the fracture was related to his arrest. Though Officer Lanie Smith asserted in his affidavit that Anderson reported suffering the injury earlier, Anderson denied that he made this statement. At this stage and without evidence that blatantly contradicts Anderson's account, the magistrate judge was required to take Anderson's version of events as true. *See Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 409 (5th Cir. 2009).

Qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2005) (quotation marks and footnote omitted). To defeat the defendants' assertion of qualified immunity, Anderson must "satisfy a two-prong test[:] First, he must claim that the defendants committed a constitutional violation under current law. Second, he must claim that the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (quotation marks and citations omitted).

We conclude that the magistrate judge erred in rejecting Anderson's account of his injuries, which leaves some contested evidence of significant injury to support the factual assertions of excessive force. We have held that a police officer defendant was not entitled to qualified immunity where, under the plaintiff's version of events, the officer slammed her face into the side of a car

No. 11-40237

once she had been handcuffed and subdued after having resisted arrest. *Bush*, 513 F.3d at 501-02. Similarly, Anderson testified that Officer Lanie Smith shocked him with the taser repeatedly while he was on the ground, no longer resisting arrest, and being beaten by Officer Brant Smith. Officer Brant Smith eventually handcuffed him and then allegedly slammed him into the ground. Anderson testified that he suffered a broken hand and a sprained knee and the medical evidence supports his claims that he fractured a finger and also establishes that he suffered other injuries including a neck sprain and had severe pain in his neck and shoulder.

Anderson satisfied the first part of the test to defeat qualified immunity by showing sufficient facts to make an issue that significant injuries did occur and that they resulted from unconstitutional acts by the officers.

Anderson's evidence also validly responded to the second part of the qualified immunity test. When Anderson was arrested, it was clearly established that a police officer's right to make an arrest "necessarily carries with it the right to use some degree of physical coercion," but the degree of acceptable force turns on the severity of the crime, whether the suspect posed a threat to the officer's safety, and whether the suspect was resisting or attempting to flee. *Saucier v. Katz*, 533 U.S. 194, 205, 208 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). A reasonable use of force for purposes of the Fourth Amendment "is 'not capable of precise definition or mechanical application.'" *Bush*, 513 F.3d at 502 (quoting *Graham*, 490 U.S. at 396). Still, Officer Lanie Smith should have known that he could not continue

No. 11-40237

to shock Anderson with the taser after he was no longer resisting arrest.[2] Officer Brant Smith should have known that he could not beat Anderson after he stopped resisting arrest or slam Anderson to the ground after he was handcuffed. *Id.* at 501-02. The evidence may well show that neither officer in fact did what Anderson claims. Summary judgment is inappropriate to resolve such disputes.

Anderson also contends that the transcript of the *Spears* hearing incorrectly omitted his testimony that he put his hands "in the air" in an attempt to surrender to the officers before he was shocked with the taser. He did not raise this issue in the district court, so this court's review is for plain error only. *Norton v. Dimazana*, 122 F.3d 286, 289 (5th Cir. 1997). The magistrate judge noted at the hearing and in his report that Anderson testified he put his hands up when he turned around to face Officer Lanie Smith. Additionally, it does not matter precisely where Anderson's hands were. It is undisputed that he turned around with an object in his hand after fleeing from police, justifying Officer Lanie Smith's initial use of the taser. Accordingly, Anderson has not shown that any error violated his substantial rights. *See id.* at 289.

The medical records do not blatantly contradict Anderson's account of the police officers' conduct. The defendants are not entitled to qualified immunity when accepting Anderson's recitation of the facts. Consequently, summary judgment was not appropriate in this case. REVERSED and REMANDED.

---

[2] The magistrate judge – after concluding the medical records contradicted Anderson's testimony – determined that Anderson had not shown the use of a taser was unreasonable. The magistrate judge reached this conclusion only by considering the use of the taser when the defendants first approached Anderson while he was holding the object they could not identify. Based on our conclusion that Anderson's testimony is competent summary judgment evidence, the use of a taser in the manner alleged in this case remains at issue on remand.