# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 11-41192

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 21, 2012

Lyle W. Cayce
Clerk

DERRICK NEWMAN,

Plaintiff-Appellee,

versus

JAMES CODY GUEDRY; DAVID TODD BURKE,

Defendants-Appellants.

Appeal from the United States District Court
for the Eastern District of Texas

Before KING, SMITH and BARKSDALE, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

James Guedry and David Burke appeal the denial of their motion for summary judgment based on qualified and official immunity from Derrick Newman's 42 U.S.C. § 1983 excessive-force and state-law claims. We dismiss the appeal for want of jurisdiction on account of our finding material those facts the district

No. 11-41192

court determined to be in genuine dispute.

I.

Late one night in August 2007, Officer Jason Torres pulled Willie Cole ("Willie") over for failing to yield to oncoming traffic while making a lefthand turn in Beaumont, Texas.[1]  Torres approached the car and asked Willie, as well as Newman, who was the passenger in the front seat, and Mario Cole ("Mario"), in the back seat, for identification.  Upon checking with dispatch, Torres learned that Mario had an outstanding warrant for unpaid traffic tickets.

Torres and Officer John Brown, who had arrived as backup, asked Mario to step out of the car and proceeded to handcuff him.  Although allowing himself to be handcuffed, Mario yelled and cursed and made it difficult for the officers to search him and put him into the squad car.  While Mario was struggling, Newman and Willie stepped out of Willie's car and urged Mario to "chill out" and comply with the officers' commands.  Although the officers instructed them to stay in the car, they remained outside.  Standing in the open doorway on the front passenger side, Newman raised his hands, palms open, while talking with Mario, then turned to lean against the car and placed his hands on its roof.

While restraining Mario, Torres radioed dispatch to ask for additional backup. Dispatch "coded" the channel, which locked all other radio traffic off the channel and allowed officers en route to hear what was going on.  Responding officers could hear Mario yelling and cursing in the background.

Officer Charles Duchamp and his trainee, Guedry, arrived at the scene just as Torres and Brown were putting Mario into Torres's car.  Duchamp approached Willie as Guedry walked up to Newman, taser drawn.  Guedry rehol-

---

[1] The facts are from what is seen and heard on three police videos of the incident, especially from Torres's dash camera ("the Torres tape") and from other competent summary-judgment evidence.

No. 11-41192

stered his taser as he ordered Newman to the rear of the car; Newman complied, consenting to a protective pat-down search.

The parties dispute how the pat-down unfolded. Newman alleges that after Guedry's hand remained on Newman's crotch for an uncomfortable length of time, he informed Guedry, "Ain't nothing there but nuts. You acting like you trying to get them." At that point, Newman alleges, Guedry shoved him in the back. Guedry contends that Newman grabbed Guedry's hand, placed it on his privates, and said "Get you some of that." Guedry further contends that Newman refused two commands to "let go of my hand," so Guedry pushed him forward. The videotapes neither contradict nor confirm either account.

Seeing Guedry push Newman forward onto the car, Burke, who had arrived just after Guedry, strode toward Newman. Burke planted his left foot between Newman's feet, pushed Newman forward onto the car with his hip and forearm, and proceeded to strike Newman's arm with his baton. After five strikes at his upper right arm, Newman stepped back. Burke replanted his feet and struck Newman five more times on the arm. Newman's shorts fell down, and Burke hit him three more times on his exposed right thigh. Burke struck Newman a total of thirteen times in about nine seconds, during which, Newman alleges, neither officer gave him any command with which he failed to comply.

Burke reholstered his baton as someone yelled, "taser, taser, taser." Guedry tased Newman, and tased him again before Newman fell to the ground.[2] Guedry then tased Newman a third time. Newman rolled onto his stomach, yelling "ok, ok, I didn't do nothing, sir, I didn't do nothing." The officers then hand-cuffed Newman; Guedry dragged him by the arm to the sidewalk; Newman waited, lying prone with his shorts around his ankles, for emergency medical

---

[2] Although defendants, in their answer, motions for summary judgment, and appellate briefing have consistently stated that Guedry tased Newman twice, Guedry testified in his deposition that he tased three five-second bursts.

3

No. 11-41192

personnel to remove the taser barbs from his skin.  Again, Newman alleges, he was not given any commands with which he failed to comply.

## II.

Newman sued in state court, alleging various state-law claims against all five officers.  After he amended his petition to include claims against each officer for use of excessive force in violation of the federal Constitution under 42 U.S.C. § 1983, defendants removed to federal court.[3]  Each defendant—Guedry, Burke, Torres, Duchamp, and Brown—moved for summary judgment on all state-law claims on the ground of official immunity and on the § 1983 claim on the basis of qualified immunity.  The district court granted summary judgment to Torres, Duchamp, and Brown, finding that Newman had not shown any evidence that they had a reasonable opportunity both to realize that excessive force was being used and to intervene to stop it.[4]  The court denied summary judgment to Guedry and Burke, concluding that there were issues of material fact as to whether the force used by the officers was clearly excessive and objectively unreasonable.

## III.

Under the collateral-order doctrine, this court has jurisdiction to hear a defendant's immediate appeal of the denial of a motion for summary judgment

---

[3] Newman amended his complaint, alleging that Police Chief Frank Coffin, City Manager James Harris, and the City of Beaumont had established a "zero tolerance policy" that was unconstitutionally directed at citizens such as Newman.  He alleged that certain areas of Beaumont were designated "high crime areas," in which officers were required to issue citations for even minor offenses, and that those areas were disproportionately located in the poorer south end of Beaumont.  The district court dismissed the complaint as time-barred, and this court affirmed.  *Newman v. Coffin*, 464 F. App'x 359 (5th Cir. 2012) (per curiam).

[4] Newman filed a notice of appeal from the order dismissing the three, but we dismissed the appeal for want of jurisdiction.  *Newman v. Dunchamp* [*sic*], No. 11-41252 (5th Cir. Mar. 8, 2012).

No. 11-41192

based on qualified immunity "to the extent that the appeal turns on a question of law." *Freeman v. Gore*, 483 F.3d 404, 410 (5th Cir. 2007). Where the district court has found that a material issue of fact exists, we have jurisdiction to review the materiality, but not the genuineness, of the factual dispute. *Id.* That is, we "can consider the legal sufficiency of the facts that the district court found to be supported by the summary judgment record." *Id.*

We review a summary judgment *de novo*, "using the same standard as that employed by the district court under Rule 56." *Kerstetter v. Pac. Scientific Co.*, 210 F.3d 431, 435 (5th Cir. 2000). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

When reviewing a summary judgment, we "must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). Even so, "we assign greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene." *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011) (citing *Scott v. Harris*, 550 U.S. 372 (2007)). When one party's description of the facts is discredited by the record, we need not take his word for it but should view "the facts in the light depicted by the videotape." *Scott*, 550 U.S. at 380-81.

A.

As public officials, Guedry and Burke ("the officers") are entitled to qualified immunity on Newman's § 1983 excessive-force claim unless (1) Newman has "adduced sufficient evidence to raise a genuine issue of material fact suggesting [their] conduct violated an actual constitutional right," and (2) the officers' "actions were objectively unreasonable in light of clearly established law at the time of the conduct in question." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th

5

No. 11-41192

Cir. 2008). Although qualified immunity is "nominally an affirmative defense," the plaintiff bears a heightened burden "to negate the defense once properly raised." *Id.*

To prevail on his Fourth Amendment excessive-force claim, Newman must establish "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005). Claims of excessive force are fact-intensive; whether the force used was "clearly excessive" and "clearly unreasonable" depends on "the facts and circumstances of each particular case." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Some relevant considerations include "the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight." *Id.*

We do not judge the reasonableness of the officers' use of force from the safety of our chambers or "with the 20/20 vision of hindsight" but rather "from the perspective of a reasonable officer on the scene . . . ." *Id.* Our inquiry is "whether the officers' actions [we]re 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* We examine each officer's actions independently to determine whether he is entitled to qualified immunity. *Meadours v. Ermel*, 483 F.3d 417, 421-22 (5th Cir. 2007).

1.

The officers contend that their use of force was objectively reasonable. They assert that Newman resisted search and arrest, that he struggled and was noncompliant, that he reached for his waistband, potentially for a weapon, and that their actions were necessary to prevent serious injury or death to themselves. Newman denies that he resisted the officers or failed to comply with any

No. 11-41192

commands. He alleges that the officers used force in response to nothing more than an off-color joke. Mindful that we are to view the facts in a light most favorable to Newman, and seeing nothing in the three video recordings to discredit his allegations, we conclude, based only on the evidence in the summary-judgment record, that the use of force was objectively unreasonable in these circumstances.

As to the severity of the underlying crime, Willie, not Newman, was pulled over for a mere traffic violation. Mario, not Newman, was arrested for unpaid parking tickets. On appeal, the officers assert that Newman violated Texas Penal Code § 38.03—Resisting Arrest, Search, or Transportation—because a "struggle ensued," and Guedry's pat-down search was "never completed."[5] Contrary to the officers' contentions, however, the "undisputed" facts do not demonstrate that Newman resisted search and arrest. On Newman's account, the search was never completed, because the officers shoved, hit, and tased him after he made an off-color joke. Newman denies that he grabbed Guedry's hand, and the videotapes, which do not show Newman's right hand at the time in question, do not contradict him.

The officers' theory that they were trying to prevent serious injury or death to themselves is severely overwrought. The videos do not show Newman attempting to strike either officer, holding a weapon, or even reaching for his waistband. The officers did not try to warn each other or the other officers that Newman had a weapon, which might be expected if either officer truly thought

---

[5] The officers also suggest that Newman violated Texas Transportation Code § 565.05 by failing to comply with Torres's order to get back into Willie's car. Presumably the officers are referring to Texas Transportation Code § 542.501—Obedience Required to Police Officers and to School Crossing Guards—given that, to our knowledge, there is no Chapter 565. In any event, Newman's failure to get back into the car is not relevant to the question of qualified immunity: We must consider the circumstances confronting the officers specifically. Neither of them consulted with Torres or Brown when they arrived at the scene almost 2½ minutes after Newman had disobeyed Torres's command.

that at the time. The officers were obviously already behind Newman, pushing him down onto the trunk of the car, before Burke began swinging his baton. Although "traffic stops may be dangerous encounters," *Maryland v. Wilson*, 519 U.S. 408, 413 (1997), and officers must have the discretion to make hard decisions in situations that are "tense, uncertain, and rapidly evolving," *Graham*, 490 U.S. at 397, the particular facts of this encounter did not justify treating Newman as a serious threat, at least at the summary-judgment stage.

No one contends that Newman attempted to flee. The officers maintain that their use of force was appropriate, because Newman struggled and was non-compliant. But, on Newman's account, he was never given any commands that he disobeyed. Duchamp, who was standing near the officers, testified that he did not recall their giving Newman any commands before striking him. In his deposition, Burke clarified that by "struggle" he meant that Newman was pushing himself off from the car and back onto the officers. Newman also failed to "comply" with Burke's first ten baton strikes by pushing off the car. After the blows to his leg, Newman's body failed to comply, according to Burke, by not falling to the ground. Even on the officers' version of events, Newman's behavior did not rise to the level of "active resistance."

Although officers may need to use "physical force . . . to effectuate [a] suspect's compliance" when he refuses to comply with commands during a traffic stop, *Deville*, 567 F.3d at 167, the officers still must assess "the relationship between the need and the amount of force used," *id.* In *Deville*, we held that a reasonable jury could find that the degree of force used was not justified where the officer "engaged in very little, if any, negotiation" with the suspect and "instead quickly resorted to breaking her driver's side window and dragging her out of the vehicle." *Id.* at 168. If Newman's allegations are true, the officers immediately resorted to taser and nightstick without attempting to use physical skill, negotiation, or even commands. Viewing the summary-judgment facts in

a light most favorable to Newman, we conclude that the use of force was objectively unreasonable.

2.

The officers maintain that their conduct was not objectively unreasonable in light of clearly established law at the time of the incident. "[T]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "The central concept is that of 'fair warning': The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (internal quotations and citation omitted). It is beyond dispute that Newman's right to be free from excessive force during an investigatory stop or arrest was clearly established in August 2007. *See, e.g.*, *Deville*, 567 F.3d at 169; *Tarver*, 410 F.3d at 753–54.

Guedry contends that he had no reasonable warning that tasing Newman multiple times violated Newman's constitutional rights, because there was then no binding caselaw on the appropriate use of tasers.[6] Lawfulness of force, however, does not depend on the precise instrument used to apply it.[7] Qualified immunity will not protect officers who apply excessive and unreasonable force merely because their means of applying it are novel.

---

[6] Burke also contends that a reasonable officer in his position could have made a reasonable mistake of law regarding the constitutionality of his use of the baton. He cites no authority for that argument, which fails for the same reason Guedry's does: None of the *Graham* factors supports Burke's use of force in this case. Nothing in this opinion, however, should be read as a prohibition on the use of tasers or batons where objectively reasonable.

[7] *See Spann v. Rainey*, 987 F.2d 1110, 1115–16 (5th Cir. 1993) (use of flashlight, hands, and nightstick); *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 846 (5th Cir. 2009) (hard knee-strike).

No. 11-41192

Furthermore, "in an obvious case," the *Graham* excessive-force factors themselves "can 'clearly establish' the answer, even without a body of relevant case law." *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004). None of the *Graham* factors justifies Guedry's tasering Newman. As noted above, on Newman's account, he committed no crime, posed no threat to anyone's safety, and did not resist the officers or fail to comply with a command.[8] Therefore, taking the facts in the light most favorable to Newman at the summary-judgment stage, the offi-cers' conduct was objectively unreasonable in light of clearly established law at the time of the incident.

## B.

As governmental employees, the officers are entitled to official immunity on Newman's state-law claims for "(1) the performance of discretionary duties (2) that are within the scope of the employee's authority, (3) provided that [they] act[] in good faith." *Telthorster v. Tennell*, 92 S.W.3d 457, 460-61 (Tex. 2002). The only dispute is whether the officers acted in good faith. On the facts before us on summary judgment, they did not.

"Texas law of official immunity is substantially the same as federal quali-fied immunity." *Wren v. Towe*, 130 F.3d 1154, 1160 (5th Cir. 1997); *see also Hag-gerty v. Tex. S. Univ.*, 391 F.3d 653, 658 (5th Cir. 2004). An officer acts in good faith if a reasonably prudent officer, under the same or similar circumstances, could have believed that the facts justified his conduct. *City of Lancaster v.*

---

[8] *See also Anderson v. McCaleb*, 480 F. App'x 768, 773 (5th Cir. 2012) (per curiam) (deciding that based on *Graham* factors, the officer "should have known that he could not con-tinue to shock [the suspect] with the taser after he was no longer resisting arrest"); *Massey v. Wharton*, 477 F. App'x 256, 263 (5th Cir. 2012) (per curiam) (stating that where none of the *Graham* factors supported officer's using his taser twice and pepper spray once, "no reasonable officer would believe the force used . . . to be reasonable"); *Autin v. City of Baytown, Tex.*, 174 F. App'x 183, 186 (5th Cir. 2005) (per curiam) (opining that nothing "would have indicated to a reasonable officer that repeatedly tasing a woman while forcing her to the ground was lawful conduct" where none of the *Graham* factors supported the officer).

No. 11-41192

*Chambers*, 883 S.W.2d 650, 656–57 (Tex. 1994). Like the federal standard from which it is derived, Texas's good-faith test is one of objective legal reasonableness. *Id.* at 656. Because the officers' use of force was not objectively reasonable, it was not in good faith, so the officers are not entitled to official immunity on Newman's state-law claims.

Under the applicable law, we have no jurisdiction to review a district court's determination that there are genuine disputes of fact where we have decided, as a matter of law, that those factual issues are material. *See, e.g.*, *Juarez v. Aguilar*, 666 F.3d 325, 331 (5th Cir. 2011). The appeal, accordingly, is DISMISSED for want of jurisdiction. We rule only on the state of the summary-judgment record, and we express no view on the ultimate facts that may be determined at trial or on the ultimate merits of any claim.

RHESA HAWKINS BARKSDALE, Circuit Judge, Dissenting:

Qualified immunity promotes the necessary, effective, and efficient performance of governmental duties, *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982), by shielding from suit "all but the plainly incompetent or those who knowingly violate the law". *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (internal citation and quotation marks omitted). In holding there is a genuine dispute of material fact, and therefore dismissing this interlocutory appeal for lack of jurisdiction, my able colleagues in the majority ignore these doctrinal underpinnings and engage in the very analysis they recognize we cannot do: they scrutinize the conduct of Officers Burke and Guedry (the Officers) with the clarity of hindsight and from the safety of judges' chambers. Sadly, they engage in judicial "Monday morning quarterbacking" at its worst. When this summary-judgment record is reviewed correctly, the Officers' application of measured force, in a tense, dangerous, and hostile environment, in August 2007 to lawfully arrest a non-compliant suspect was objectively reasonable, shielding them with qualified immunity. Therefore, I must respectfully dissent.

**I.**

For the Officers' summary-judgment motion, both sides rely on three video recordings taken from police cruisers. The primary recording is from Officer Torres' dashboard camera; he was the Officer who pulled the vehicle over. That recording captured passenger Mario Cole's continuing, insulting, and outrageous conduct in resisting arrest; driver Willie Cole's and passenger Newman's refusing to obey Officer Torres' orders to remain inside the vehicle; Officer Guedry's lawfully searching Newman; and, after a struggle erupted during that search, the Officers' using measured force and Newman's resulting arrest. The video neither corroborates nor discredits either side's account, discussed *infra*,

of precisely what provoked that struggle. But, it does plainly show the precipitant moment the Officers reacted.

The Officers also supported their motion with, *inter alia*: Officer Guedry's deposition testimony, in which he relates witnessing Newman's refusing to obey Officer Torres' orders; and affidavits by Detective Tolley, a former police training officer familiar with the Beaumont Police Department's use-of-force policy. Detective Tolley provided frame-by-frame analysis of, *inter alia*, the 33 seconds it took to initiate Newman's search and effect his arrest. Additionally, the Officers supported their motion with an expert report prepared by Duncan, Director of the Lamar Institute of Technology Regional Police Academy. Duncan, a three-decade law-enforcement veteran, described the reasonableness of the Officers' actions under the rapidly-evolving circumstances as requiring split-second, potentially life-or-death decisions.

Newman opposed the Officers' summary-judgment motion with: his earlier testimony (which largely parrots the allegations in his civil complaint) in the Officers' criminal trial; an affidavit and deposition of Grafton, an associate professor of criminal justice and former law-enforcement officer, which impugns the Officers' account as false and contends the video failed to corroborate that account; and Officer Burke's deposition testimony, in which he relates Newman's failing to comply after each baton strike by pushing off a vehicle into the Officers and by attempting to strike Officer Burke.

## II.

There is no genuine dispute of material fact. Pursuant to the material facts and controlling law, the Officers are entitled, through summary judgment, to qualified immunity against the excessive-force claim and official immunity against the state-law claims.

11-41192

## A.

Qualified immunity shields public officials from *suit*, rather than merely providing an affirmative defense to *liability*. *Mitchell v. Forsythe*, 472 U.S. 511, 526 (1985); *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). To abrogate this immunity, plaintiff must show, through the well-known, two-prong test: first, the official violated a statutory or constitutional right; and second, the official's "actions [constituted] objectively unreasonable conduct in [the] light of clearly established law at the time of the conduct in question". *Brumfield*, 551 F.3d at 326.

In the excessive-force context at issue here, although the long-established two prongs contain similar "objective reasonableness" elements, they remain distinct and deserve independent inquiry. *Id.* Importantly, the sequence of analysis is immaterial, *Pearson v. Callahan*, 555 U.S. 223, 224 (2009), and qualified immunity may be granted without deciding the first prong, *Kovacic v. Villarreal*, 628 F.3d 209, 213 (5th Cir. 2010). Deciding the second prong first is often advisable; for example, if, as here, a constitutional right is claimed to have been violated (first prong), "this approach [of first addressing the second prong] comports with the usual reluctance to decide constitutional questions unnecessarily". *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012).

Therefore, the Officers are entitled to qualified immunity, through summary judgment, unless Newman shows a genuine dispute of material fact exists on whether: (1) for his excessive-force claim, he was injured as a result of force that was excessive to the need and objectively unreasonable, *and* (2) the application of that force was objectively unreasonable in the light of then clearly-established law. Avoiding the constitutional issue and proceeding directly to the second prong, *id.*, the Officers are entitled to qualified immunity because: Newman has not met his summary-judgment burden to show a genuine dispute

14

of material fact; and, considering the material facts, the Officers' conduct was not objectively unreasonable in the light of then clearly-established law.

Contrary to the majority opinion at 11, there is no genuine dispute of material fact; therefore, we have jurisdiction for this interlocutory appeal. *E.g.*, *Behrens v. Pelletier*, 516 U.S. 299, 312-13 (1996) (jurisdiction to review summary-judgment denial determining conduct violated clearly-established law).  The single disputed fact, *which is not material*, concerns what precisely provoked the Officers' measured application of force.  They maintain Newman reached for his waistband during a lawful search and resisted a lawful arrest; Newman maintains he was struck and Tased in retaliation for his admitted extremely disgusting, offensive, insulting, and provocative remark.

Whatever the catalyst, the majority glosses over that Newman, by refusing Officer Torres' orders to remain inside the vehicle, subjected himself to lawful arrest. *E.g.*, TEX. PENAL CODE ANN. § 38.15(a) (interference with peace officer a misdemeanor); TEX. TRANSP. CODE ANN. § 542.501 (refusal to comply with police officer's lawful orders a misdemeanor).  Although the video is inconclusive on what precisely provoked the measured application of force, *cf. Scott v. Harris*, 550 U.S. 372, 380-81 (2007) (video evidence accorded greater weight when it plainly *contradicts* a party's assertion), it plainly shows Newman's refusing to obey Officer Torres' orders, which discredits his asserting he complied with Officers Burke and Guedry during the search and arrest, *id.*  Also plainly shown is Officer Guedry's reacting suddenly while searching Newman, and Officer Burke's assisting Officer Guedry after noticing the ensuing struggle.

Along this line, the majority incorrectly states Officer Guedry was unaware Newman refused orders to remain in the vehicle. *Maj. Opn.* at 7, n.5. Officer Guedry testified in his deposition that, upon his arrival on the scene, he heard an order to "get back in the vehicle", and noted Newman's non-compliance

as he (Officer Guedry) approached. Because Newman committed a misdemeanor in Officer Guedry's presence, further probable cause to arrest attached. And, because Officer Guedry had initiated the search, it was reasonable for Officer Burke to assist without independently verifying its lawfulness. Probable cause notwithstanding, and regardless of the alleged provocation, Newman had no right to resist. TEX. PENAL CODE ANN. § 38.03 (resisting *unlawful* arrest a misdemeanor).

The majority reduces the inquiry to a single question: whether the Officers applied more force than necessary to effectuate Newman's arrest. Dispensing with qualified immunity's second prong by casting this an "obvious case", the majority hangs its analysis on *Graham*'s well-known excessive-force factors. *Maj. Opn.* at 10. But the cases it cites to support this proposition, *Maj. Opn.* at 218, n.8, are non-precedential and distinguishable on their facts: *Anderson v. McCaleb*, 480 F. App'x 768 (5th Cir. 2012) (no qualified immunity when force applied *after* suspect handcuffed and laid on ground); *Massey v. Wharton*, 477 F. App'x 256 (5th Cir. 2012) (no qualified immunity when *no probable cause to arrest*); *Autin v. City of Baytown*, 174 F. App'x 183 (5th Cir. 2005) (no qualified immunity when 59-year-old woman Tased repeatedly *after* being subdued).

A proper application of qualified immunity's second prong leads to holding the Officers' conduct was not objectively unreasonable in the light of clearly-established excessive-force law. A right is sufficiently clear, and thus "clearly established", when "every 'reasonable official would have understood that what he is doing violates that right'". *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2078 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Re-stated, "existing precedent must have placed the statutory or constitutional question beyond debate". *al-Kidd*, 131 S. Ct. at 2083. This "clearly established" standard protects

the necessary balance between vindication of constitutional or statutory rights and effective performance of governmental duties by ensuring officials can "reasonably . . . anticipate when their conduct may give rise to liability for damages". *Davis v. Scherer*, 468 U.S. 183, 195 (1984).

The majority's incantation that the right to freedom from excessive force was clearly established at the time of Newman's arrest, *Maj. Opn.* at 9, disregards the Supreme Court's admonition not to define clearly-established rights at a high level of generality. *al-Kidd*, 131 S. Ct. at 2084.  The fact-specific nature of excessive-force claims, *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009), requires viewing the Officers' actions prospectively, in the light of "the circumstances *that appeared to the officer*", to determine whether such conduct was objectively reasonable. *Snyder v. Trepagnier*, 142 F.3d 791, 800 (5th Cir. 1998) (emphasis in original) (internal citation omitted) (Smith, J.).

Equally important is the Officers' concomitant, obvious right to use "measured and ascending responses", calibrated to physical and verbal resistance. *Galvan v. City of San Antonio*, 435 F. App'x 309, 311 (5th Cir. 2010).  That took place here.  (Relevant to this use of measured force, not long after the challenged conduct, a handcuffed Newman can be seen walking easily to a police vehicle with no apparent injury.)

Therefore, the Officers are entitled to qualified immunity unless it was clearly established that the measured and ascending force they applied would have been objectively unreasonable to "*every* reasonable official" in like circumstances. *al-Kidd*, 131 S. Ct. at 2078 (internal citation and quotation marks omitted) (emphasis added).  Against this legal backdrop, this claim cannot be placed among those where excessive-force plaintiffs overcame the qualified-immunity defense. *E.g.*, *Spann v. Rainey*, 987 F.2d 1110 (5th Cir. 1993) (no qualified immunity on summary judgment when arrestee in diabetic coma

beaten on head with flashlights); *Tarver v. City of Edna*, 410 F.3d 745 (5th Cir. 2005) (same, when plaintiff provided witness testimony that officer slammed door on plaintiff's head in retaliation); *Deville*, 567 F.3d 156 (same, when two officers shattered window of driver who refused to exit vehicle, threw her against side of vehicle before arrest, and applied handcuffs so tightly four reconstructive surgeries were required); *Petta v. Rivera*, 143 F.3d 895 (5th Cir. 1998) (same, when officer shattered window, brandished revolver, and fired round at vehicle occupied by two children whose driver refused to exit after minor traffic stop).

The majority cites *Deville* as justification for holding there is a genuine issue of material fact on whether the Officers' conduct was objectively unreasonable. *Maj. Opn.* at 8-9. Yet *Deville* is so factually distinguishable from the situation at hand that the majority vitiates its own conclusion. In *Deville*, our court reversed the district court's granting summary judgment on qualified-immunity grounds. 567 F.3d 156. An officer stopped the *Deville* plaintiff for speeding, and a second, off-duty officer responded. The second officer demanded that plaintiff roll down her window, but shattered it before she was able to comply; the plaintiff maintained she was never asked to sign a ticket, never threatened to flee, and the minor child inside her vehicle was never in danger. *Id.* Viewing this account – which the officers disputed – in the light most favorable to her, our court held it was objectively unreasonable for the officers, pursuant to a traffic stop *unsupported by probable cause*, to shatter her vehicle window, forcibly extricate her, slam her against the vehicle, and apply handcuffs so tightly four reconstructive surgeries were required (among other significant injuries). *Id.*

Obviously, the Officers here were confronted with a situation far more volatile than that in *Deville*. Therefore, and unlike the *Deville* officers, it was not objectively unreasonable for the Officers to forego negotiation; indeed,

18

11-41192

Newman had already refused to comply with Officer Torres' orders. Moreover, the Officers were reacting to Newman's physical resistance, unlike the *Deville* officers' application of force against passive resistance. Importantly, and unlike Newman, the *Deville* plaintiff had the state-law right to resist an unlawful arrest (*i.e.* arrest unsupported by probable cause). *Id.*

The circumstances confronting the Officers put further distance between this action and *Deville*. Officers Burke and Guedry responded at midnight, to a high-crime area, where the first two Officers at the scene were outnumbered and struggling with an extremely non-compliant, physically-combative, and verbally-abusive arrestee with outstanding arrest warrants for unpaid traffic tickets. When Officer Burke arrived, Officer Guedry was preparing to search Newman. In the ensuing struggle, Officer Burke employed his baton in accordance with department policy, striking only at the upper arm and leg, to avoid causing Newman serious or permanent injury. Unable to control Newman's hands, Officer Guedry energized his Taser. After Officer Guedry used the Taser, Officer Burke re-holstered his baton and ceased all force. Newman submitted only after being Tased a third time.

No reasonable officer in Officer Burke's or Guedry's position, acting under those circumstances, could "reasonably [have] anticipate[d] . . . [his] conduct [would] give rise to liability for damages". *Davis*, 468 U.S. at 195. (The majority incorrectly states that, when Newman was on the ground, Officer Guedry dragged him while handcuffed. *Maj. Opn.* at 3. Officer Torres' video instead shows Officer Guedry wisely moved Newman out of an active traffic lane. In any event, this fact is not material.)

In spite of the on-scene tension, Newman's refusing to obey Officer Torres, and the rapid succession of events (which his video clearly establishes), the majority parades its tactical competency by suggesting Newman could have been

arrested through "physical skill, negotiation, or [ ] commands". *Maj. Opn.* at 8. Needless to say, neither of my esteemed colleagues was at the scene. This is the very type of post-hoc, subjective analysis that *Graham* and its progeny understandably condemn.

## B.

For official immunity from the state-law claims, and as the majority recognizes, Texas' "good faith" element is analogous to qualified immunity's "objective reasonableness". *Maj. Opn.* at 10-11. Therefore, the Officers are entitled to official immunity against the state-law claims.

## III.

"It is not the critic who counts . . . . The credit belongs to [those] actually in the arena . . . spend[ing] [themselves] for a worthy cause". Theodore Roosevelt, Address at the Sorbonne, Paris: Citizenship in a Republic (23 Apr. 1910). Most regrettably, the tone and tenor of the majority opinion convey sarcasm and hostility for the Officers' conduct in a volatile, hostile, and dangerous situation; a situation in which split-second decisions must be made for the safety of all involved – citizen and police. The conduct resulting from those decisions may not be polite and pretty, but it is necessary. And, it may require more than hurt feelings. Nor is the interaction between officers and citizens a debating society. (In that regard, at oral argument, Newman's counsel maintained Officers at the scene should have welcomed Newman's trying to calm the situation, instead of obeying the clear order to return inside his vehicle. Simply put, this is an absurd position.)

And, more to the point here, the Officers' conduct is shielded by qualified immunity. In the light of this summary-judgment record, the Officers are

11-41192

entitled to qualified immunity against the excessive-force claim and to official immunity against the state-law claims. To hold otherwise is to turn a blind eye to the material facts at hand (which are not disputed) and the controlling law. Therefore, I must respectfully dissent.