# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-50028

United States Court of Appeals
Fifth Circuit

**FILED**
April 24, 2020

Lyle W. Cayce
Clerk

JUSTIN SCOTT,

> Plaintiff - Appellee

v.

OFFICER GREGORY WHITE, also known as Greg White,

> Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:16-CV-1287

Before JOLLY, GRAVES, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Appellant Sergeant Gregory White appeals from the district court's order denying him summary judgment based on qualified immunity. We DISMISS for want of jurisdiction.

## BACKGROUND

Appellee Justin Scott filed a 42 U.S.C. § 1983 action against White in federal district court, alleging that White violated his Fourth Amendment

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-50028

rights to be free from unreasonable search, unreasonable seizure, and the use of excessive force, and Fourteenth Amendment right to due process. Scott also brought § 1983 claims against the City of Austin, Texas, based on an alleged policy and practice of permitting the use of excessive force and an alleged failure to adequately train or supervise its officers.

The district court dismissed each of Scott's claims except for his excessive force claim against White. On that claim, White's motion for summary judgment based on qualified immunity was denied.

## SUMMARY JUDGMENT EVIDENCE[1]

In February 2015, White, a sergeant with the Austin Police Department, responded to a 911 call about a suspicious person. On arrival at the scene, White saw Scott. White asked Scott several questions, such as whether Scott had an identification card and whether he was with anyone else. Scott was generally unresponsive. However, when asked whether he had a weapon on him, Scott said, "No." During this exchange, Scott held a circular object with both hands at his stomach.[2]

After Scott said that he did not have any weapons on him, White moved to Scott's left side and grabbed Scott's left hand. White did not grab the circular object, which Scott continued to hold with his right hand at his stomach. White then instructed Scott to drop the circular object. In response, Scott moved his

---

[1] The facts recounted in this Section are gleaned from the record on appeal, particularly an audiovisual recording of the encounter from White's police vehicle dashcam and a transcript of the recording. The video may be accessed via the following internet link: http://www.ca5.uscourts.gov/opinions/unpub/19/19-50028.mp4.

[2] The Austin Police Department's General Offense Hardcopy—a type of police report— regarding the incident includes a supplement to the initial incident report in which Joseph Herman Hebbe states that he gathered Scott's personal belongings and retrieved from the scene "a[n] unknown plastic/metallic object approximately 3" to 4" in diameter and .5" in height which may have weighed approximately 1 pound." Hebbe adds, "The unknown object was similar in size and shape of a coaster used for drinking glasses."

right hand from his stomach down to his right side, continuing to hold onto the object.  The video does not depict Scott actively resisting White's hold on his left hand.  It is at this point that White hit Scott's head or neck from behind, grabbed Scott's abdomen with both hands from behind, pushed Scott onto the ground, and rolled on top of Scott.  White's use of force up until this point is his initial use of force.[3]

Once on the ground, Scott twisted and turned underneath White as White repeatedly punched, elbowed, and kneed Scott.  Contemporaneously, Scott covered his head with his hands, screamed, and—at times—curled his legs inward.  Meanwhile, White repeatedly instructed Scott to put his hands behind his back.  White then held Scott down and tasered him.  As he was being tasered, Scott moved his hands onto White's left arm.

Afterward, White continued hitting Scott.  White then said, "Let go of my taser," punched Scott repeatedly, rolled Scott back onto his stomach, and then resumed punching Scott as Scott screamed.  (Later, White told another officer who arrived on the scene that he "got tased" and that "[Scott] took my taser from me and tased me.")[4]  White repeated, "Put your hands behind your

---

[3] There are two distinct times when White uses force: (1) before Scott is on the ground, and (2) once Scott is on the ground.  To distinguish between these uses of force, we—as did the district court—refer to White's use of force before Scott is on the ground as White's "initial use of force" and White's uses of force once Scott is on the ground as White's "subsequent use of force."

[4] During his deposition, Scott stated that, "while I was being tased[,] . . . my hand grabbed [White's] arm at the same time, and it went through him, got him."  When asked whether he had the taser in his hand, he said, "yeah, it was in my hand at that point."  But when asked why he picked up the taser, he said, "I didn't pick it up.  It was kind of – I don't know how to describe how it happened."  When asked again whether he had the taser in his hand, Scott said, "No . . . . I said at one point I grabbed his arm, and he got tased through me. . . ."  In a recorded interview, Scott also said that he grabbed the taser, but then explained, "I don't – I wasn't in control, like, at that point.  I was just, like – my body was, like shaking.  Like, I – I was – I was protecting myself."  Scott's expert Kimberly Bustos, relying in part on the video of the incident, interprets Scott's actions once he was on the ground as defensive rather than resistive.  Bustos states that it appears that Scott attempted to comply with

No. 19-50028

back" several times, and Scott said, "I can't." White then put his whole body on top of Scott and remained on Scott until other officers arrived on the scene. White's use of force once Scott was on the ground is White's subsequent use of force.

White and Scott were treated for injuries after the incident. White broke his right ring finger during his encounter with Scott. White states that he "believe[s]" he broke his finger when "we were struggling over my Taser." However, he also states that the broken finger "possibly occurred from delivering strikes."[5]  Scott complained of throbbing to his forehead, and emergency medical services (EMS) personnel noted "various facial abrasions" without significant bleeding. EMS personnel also removed a taser probe embedded in Scott's chest. At a hospital after the incident, Scott was diagnosed with "[f]acial abrasion" and "[h]ead contusion."

## STANDARD OF REVIEW

This court has jurisdiction over appeals from a district court's final decision. 28 U.S.C. § 1291. "Ordinarily, we do not have jurisdiction to review a denial of a summary judgment motion because such a decision is not final within the meaning of 28 U.S.C. § 1291." *Perniciaro v. Lea*, 901 F.3d 241, 250 (5th Cir. 2018) (citation and internal quotation marks omitted). But "the denial of qualified immunity on a motion for summary judgment is immediately appealable if it is based on a conclusion of law." *Id.* (citation and internal quotation marks omitted). "We have no jurisdiction to hear an interlocutory appeal, however, when a district court's denial of qualified immunity rests on the basis that genuine issues of material fact exist." *Michalik v. Hermann*, 422 F.3d 252, 257 (5th Cir. 2005).

---

White's commands, but "it [was] physically impossible for . . . Scott to place his hands behind his back," and "Scott [was] not seen attempting to use the Taser against [White]."

[5] White told other officers, "I was punching the sh[*]t out of [Scott]."

4

No. 19-50028

"Because of this case's posture, . . . review is limited to determining whether the factual disputes that the district court identified are material to the application of qualified immunity." *Samples v. Vadzemnieks*, 900 F.3d 655, 660 (5th Cir. 2018) (emphasis omitted). The plaintiff carries the burden to rebut the defense of qualified immunity. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). Nonetheless, "[w]e accept the plaintiff's version of the facts as true and review it through the lens of qualified immunity." *Samples*, 900 F.3d at 660; *see also Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014) ("[T]he facts [must be] taken in the light most favorable to the party asserting the injury[.]") (internal quotation marks, citation, and brackets omitted). "If the defendant would still be entitled to qualified immunity under this view of the facts, then any disputed fact issues are not material, the district court's denial of summary judgment was improper, and we must reverse; otherwise, the disputed factual issues are material and we lack jurisdiction over the appeal." *Lytle v. Bexar Cty.*, 560 F.3d 404, 409 (5th Cir. 2009). Put another way, "[i]f a factual dispute must be resolved to make the qualified immunity determination, that fact issue is material and we lack jurisdiction over the appeal." *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009). The court reviews the materiality of factual disputes and the district court's legal conclusions de novo. *Hampton v. Oktibbeha Cty. Sheriff Dep't*, 480 F.3d 358, 364 (5th Cir. 2007).

## DISCUSSION

White raises three issues on appeal: whether the district court erred in (1) relying on unsupported allegations and evidence outside the summary judgment record, (2) holding that Scott's physical injuries are not categorically de minimis, and (3) holding that White is not entitled to qualified immunity at the summary judgment stage. We address each issue.

First, the court lacks jurisdiction to consider White's arguments that the district court erred in relying on mere allegations and evidence outside the

summary judgment record. *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996) ("[D]eterminations of evidentiary sufficiency at summary judgment are not immediately appealable merely because they happen to arise in a qualified-immunity case[.]") (citing *Johnson v. Jones*, 515 U.S. 304, 313–318 (1995)); *Wagner v. Bay City*, 227 F.3d 316, 320 (5th Cir. 2000) ("In deciding an interlocutory appeal of a denial of qualified immunity, we can review the *materiality* of any factual disputes, but not their *genuineness*.") (emphasis in original).

Second, White's argument that Scott's physical injuries are categorically de minimis as a matter of law is unavailing. White relies on *Westfall v. Luna* for this proposition. 903 F.3d 534 (5th Cir. 2018). White reads *Westfall* too broadly. In *Sam v. Richard*, for example, we held:

> Although a de minimis injury is not cognizable, the extent of injury necessary to satisfy the injury requirement is directly related to the amount of force that is constitutionally permissible under the circumstances. Any force found to be objectively unreasonable necessarily exceeds the de minimis threshold, and, conversely, objectively reasonable force will result in de minimis injuries only. . . . In short, as long as a plaintiff has suffered some injury, even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force.

887 F.3d 710, 713 (5th Cir. 2018) (quoting *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017)) (emphasis and italics omitted). Accordingly, Scott's physical injuries are not categorically de minimis as a matter of law.[6]

---

[6] Relatedly, White argues that his initial uses of force caused no injury. But the medical records are silent as to the cause of Scott's injuries and are consistent with Scott's account that the injuries he sustained are related to both White's initial and subsequent uses of force. *See Anderson v. McCaleb*, 480 F. App'x 768, 772 (5th Cir. 2012) (unpublished) (right-hand fracture a plaintiff sustained was "arguably consistent" with the plaintiff's account that the fracture was related to his arrest where the "medical records [were] silent as to the cause of the fracture" and additionally showed "an abrasion and contusion" of the plaintiff's right

No. 19-50028

Third, the district court correctly determined that disputes of material fact exist, precluding summary judgment. The district court considered the totality of the circumstances, construed the evidence in the light most favorable to Scott, and viewed Scott's version of events as a reasonable officer on the scene would have to correctly hold that a reasonable jury could determine that White's use of force was objectively unreasonable and therefore in violation of Scott's Fourth Amendment right to be free from excessive force. *See Darden v. City of Fort Worth*, 880 F.3d 722, 728–29 (5th Cir. 2018). The video evidence does not "utterly discredit[]" Scott's allegations regarding White's initial and subsequent uses of force such that "no reasonable jury could have believed [Scott]." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *see also Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011) ("A court of appeals need not rely on [a] description of the facts where the record discredits that description but should instead consider the facts in light depicted by the videotape.") (citation and internal quotation marks omitted).

Further, the district court correctly determined that clearly established law at the time of White's violation prohibited his use of force given the circumstances and construing the evidence in the light most favorable to Scott. *See Kisela v. Hughes*, 138 S. Ct. 1148, 1152–53 (2018); *see also Darden*, 880 F.3d at 729–32 (describing clearly established law as of May 2013 and stating that "a constitutional violation occurs when an officer tases, strikes, or violently slams an arrestee who is not actively resisting arrest"); *Hanks v. Rogers*, 853 F.3d 738, 747 (5th Cir. 2017) (describing clearly established law as of February 2013 and stating that excessive force is established where an officer "abruptly resorts to overwhelming physical force rather than continuing

---

wrist, even though the plaintiff said "at the time that the fracture was an old injury"). "At this stage and without evidence that blatantly contradicts [Scott's] account, [we are] required to take [Scott's] version of events as true." *Id.* (citing *Lytle*, 560 F.3d at 409).

verbal negotiations with an individual who poses no immediate threat or flight risk, [and] who engages in, at most, passive resistance"); *Trammell v. Fruge*, 868 F.3d 332, 343 (5th Cir. 2017) (holding that "the law [as of January 2013] clearly established that it was objectively unreasonable for several officers to tackle an individual who was not fleeing, not violent, not aggressive, and only resisted by pulling his arm away from an officer's grasp") (citing *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000)).

Accordingly, issues of material fact exist, and we lack jurisdiction over this appeal.

## CONCLUSION

For the foregoing reasons, we DISMISS this appeal for want of jurisdiction.